OPINION OF THE COURT
Robert E. Fischer, J.
Plaintiff paid approximately $14,000 for a new car in December of 1986, which was substantially damaged a few weeks later solely as a result of the negligence of the defendant. Plaintiff now brings her action for property damages urging that she should receive an award of damages sufficient to make her whole, even though such an award may include the loss in market value of her car in addition to the cost of repair.
*10 The facts are not in dispute. After the collision, the plaintiff went to the dealer from which she had purchased the car to trade the damaged car in for a new one. She was then advised that the vehicle she had purchased several weeks before, even if fully repaired, had diminished in value by $1,500 to $2,000 because it had been involved in a substantial collision; that although the "trade in” value of her car would have been $12,500 if not damaged, its market value when repaired was several thousand dollars less because of the nature of the damage it had suffered.
Unable to pay the difference, the plaintiff had her automobile "fully repaired” by the dealer at a cost of approximately $5,600, only to have undiscovered damage to the transmission render the car inoperable a few weeks thereafter. Again unable to obtain the full value for the damaged car, the transmission was repaired at a cost of $1,325.
The rationale underlying the diminution in value of the automobile even after "full repair” was revealed in the testimony of the witnesses presented by the plaintiff. Thus, the repair mechanic explained that the parts of a car suffering damage in a substantial collision can be identified — and later repaired — only if visible on inspection, while some defects may appear only upon the operation of the car after extended use. Other witnesses experienced in the trade established that it is accepted practice to disclose to prospective buyers whether a car had been substantially damaged and repaired; that in any event, if repairs of substance had been made, such would be readily apparent on inspection by an experienced mechanic. All agreed that a vehicle damaged to the extent revealed here, although it appeared to be fully repaired and operational, was not as saleable as one that had not suffered such damage, and such would be reflected in a reduced market price.
The defendant does not deny that he was the sole cause of the damage, nor does he controvert plaintiff’s evidence that her car, even after repair of the visible damage, was worth substantially less as a result of his fault. He asserts, however, that legal precedent precludes an award for such loss and limits liability in such instance to the cost of repair of plaintiff’s vehicle, since the repair cost is less than the plaintiff’s loss in market value resulting from the collision. Essentially, the defendant asserts that even though the plaintiff suffered an identifiable loss in the value of her car as a result of his fault, recovery for that loss is precluded in this jurisdiction by long-standing precedent, stated in a leading text as follows: *11 "When personal property is damaged, but not destroyed, by the negligence of another, the measure of damages recoverable for such injury may be either the difference in the market value of that property immediately before and immediately after the injury, or the reasonable cost of repairs necessary to restore it to its former condition, whichever is the lesser.” (36 NY Jur 2d, Damages, § 81, at 144.)
Cited by that text in support of the foregoing statement is Gass v Agate Ice Cream (264 NY 141 [1934]), involving damage that occurred in 1932 to an automobile manufactured in 1925 by a company that thereafter went out of business. There, the evidence had established a before-accident value of the car of $100, but a repair cost of approximately $224, leading the court to conclude that an award of damages exceeding the value of the car by $124 was "obviously unfair” (at 143) since the "plaintiff should not benefit by the loss” (at 143-144).
In turn, the court in Gass (supra) pointed to the principles stated in Hartshorn v Chaddock (135 NY 116) for support, although the latter involved damages arising from injury to real property: "The rule seems to be that when the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition is less than what is shown to be the'diminution in the market value of the whole property by reason of the injury, such costs of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages, the rule of avoidable consequences requiring that in such a case the plaintiff shall diminish the loss as far as possible.” (Hartshorn v Chaddock, supra, at 122.)
Although each of these early opinions of the Court of Appeals had concluded on the facts before them that the cost of repair or restoration of property was the appropriate measure of damages if less than the property’s diminution in value, we observe that the conclusion reached in each was necessitated by fundamental policy considerations not applicable here — that the "plaintiff should not benefit by the loss” (Gass v Agate Ice Cream, supra, at 143-144), or that the plaintiff has a duty to "diminish the loss as far as possible” (Hartshorn v Chaddock, supra, at 122).
Other opinions rendered by intermediate appellate courts early in the century have addressed the rationale advanced here by the plaintiff to support her claim for loss in value. In *12 Howe v Johnston (220 App Div 170) the court acknowledged plaintiffs theory that "there exists, in the minds of would-be purchasers of second-hand cars, a prejudice against such as have been subjected to accidental injury, which prejudice diminishes their market value from what it would otherwise have been” (at 171). Observing that "no claim of inability to fully repair [the car] is made” (at 172), the court rejected the plaintiffs claim and limited recovery to $30.81, the cost of repair of the vehicle. It appears that the court in Howe relied in part on an earlier determination of "the precise question” in Mendleson v Van Rensselaer (118 App Div 516) where a claim that "a wagon that had gone through an accident would not sell for as much as it otherwise would” was rejected as "purely fanciful” (supra, at 518). A few years after the decision in Howe, the court in Parilli v Brooklyn City R. R. (236 App Div 577) appears to have approved as alternative methods for establishing property damage either diminution in market value or reasonable value of necessary repairs, but awarded "as a practical matter” (at 579) vehicle damage of $174.
However, most often quoted in this regard (see, e.g., Consolidated Box Co. v Penn, 15 Misc 2d 705; Lewis v Adams, 18 Misc 2d 393; Steffani v Baker, 88 Misc 2d 215) is the language in Johnson v Scholz (276 App Div 163) decided in 1949. There the majority of a divided court, citing Hartshorn, Mendleson, Howe and Parilli (supra) in support, rejected a damage claim for the diminution in value of an automobile in favor of a lesser cost of repair[1] and stated the proposition that defendant would apply here: "The measure of damages for injury to property resulting from negligence is the difference in the market value immediately before and immediately after the accident, or the reasonable cost of repairs necessary to restore it to its former condition, whichever is the lesser” (at 164).
A leading text has characterized the reasoning in Gass, Parilli and Howe (supra) as "confusing” and concluded—even after Johnson v Scholz (supra)—that in New York "the status of the rule [is] uncertain” (4 Harper, James & Gray, Torts, at 539 [2d ed 1986]).
Whatever conclusions may be drawn from those earlier *13 opinions, it is apparent that the damage issues then addressed occurred in the early development of the automobile as a common means of conveyance. Once little more than a gasoline-powered motor mounted on four wheels, the automobile has evolved into an intricate combination of mechanical, electrical and electronic components, operated on modern highways at speeds unimagined 50 years ago.
As suggested in the testimony of a repair mechanic presented here, any assessment of substantial collision damage resulting to an automobile of modern construction, or even identification of the damage, is necessarily limited to those operating portions of the compact inner workings available to test and to view. As a result, remote and undiscovered defects which can affect the damaged vehicle’s safety may not, despite conscientious inquiry, be identified until long thereafter. We need look no further than the Trial Calendars of our courts to establish that with the growth in the number of vehicles on the highway, often traveling in close proximity to one another at high speeds, a minor defect in the operating efficiency of a motor vehicle can be a substantial source of danger. Given this knowledge, it is apparent that a prospective purchaser would be more reluctant to purchase an automobile that had suffered substantial collision damage, even though alleged to have been fully repaired, and such reluctance would be reflected in its value in the resale market. As a result, expert testimony that an automobile which had been substantially damaged suffers a loss in value because of that occurrence, even though the visible damage is repaired or replaced, can no longer be deemed "purely fanciful” (Mendleson v Van Rensselaer, supra, at 518).
It has been observed that failure to award additional damages for loss in market value of a damaged vehicle, even though repaired, "would violate the basic principle of tort law that the injured party should, insofar as possible, be restored to his or her original position before the accident” (4 Damages in Tort Actions, at 37-93—37-94), while other commentators described such limitation as "completely unjustifiable” (4 Harper, James & Gray, op. cit., at 537, n 5). Finally, Restatement (Second) of Torts § 928 concurs in the view that a wrongdoer should respond in damages, not only for repair of the property damaged, but for such loss of value as may have been caused by the tortious act:
*14 "§ 928. Harm to Chattels
"When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
"(a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs, and
"(b) the loss of use.”
Search for an appropriate and consistent rationale in this jurisdiction for resolution of such property damage claims leads us to the early pronouncements of our courts as to the principles applicable to the determination of damages in tort actions. It has long been recognized in this regard that the purpose for an award of damages is "to make the owner whole in each case” (Ward v New York Cent. R. R. Co., 47 NY 29, 33); and among the "well-settled” rules relating to damages recoverable in tort actions is that "[t]he person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events” (Steitz v Gifford, 280 NY 15, 20).
Application of those basic principles to the facts before us permits only of the conclusion that where, as here, the repair of the plaintiff’s car does not make her whole, she is entitled to an award that will do so. In this instance that entitlement is to the reasonable cost for repairing the physical damage to the plaintiff’s automobile, together with the difference in its market value before the accident and after it is repaired. To hold otherwise would permit a tort-feasor to carelessly damage a new, or reasonably new car, and escape the full consequence of his act by tender of the cost of repair alone, even though measured by modern market conditions, the owner suffered a loss in value exceeding the repair cost.
The precise cost to repair the plaintiff’s vehicle was $7,048.48, as stipulated by the parties. It is uncontroverted that the market value of her car — which we equate here with "trade in” value, or value she would receive if she were to trade the repaired vehicle for a new vehicle of the same make, kind and year of manufacture[2] — was reduced by at least $2,000.
*15 The plaintiff is entitled to an award of damages in the amount of $9,048.48. Judgment, which shall include interest, may be submitted accordingly.

. Although the majority apparently rejected the claim that the damaged automobile was diminished in value despite being fully repaired, the opinion also stated: "Where the repairs do not restore the property to its condition before the accident, the difference in market value immediately before the accident and after the repairs have been made may be added to the cost of repairs” (Johnson v Scholz, 276 App Div 163, 165).

. Restatement (Second) of Torts § 911, comment d provides: "Since the measure of recovery is determined by the harm done, the market that *15 determines the measure of recovery by a person whose goods have been taken, destroyed or detained is that to which he would have to resort in order to replace the subject matter.”