**Rodney L. WILLETT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A-3565.**

Court of Appeals of Alaska.

April 3, 1992.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

---

Jill De La Hunt, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Rodney L. Willett was convicted by a jury of criminal mischief in the second degree, AS 11.46.482(a)(1). He appealed, contending that the state failed to present sufficient evidence as to the amount of damage he caused and that the trial court misinstructed the jury on the determination of the damage amount. We affirm.

In July of 1989, Bill Golding drove his girlfriend, Kathleen Hortsman, to her home in Fairbanks. There, they found Rodney L. Willett, Hortsman's former boyfriend, waiting in the driveway. As Golding's car approached, Willett began arguing with Hortsman. He threw a rock through Golding's windshield, jumped onto the car, and started to fight with Golding, causing him to lose control of the vehicle and roll it over an embankment.

As a result of this incident, the state charged Willett with criminal mischief in the second degree. Under AS 11.46.-482(a)(1), criminal mischief in the second degree occurs when a person intentionally "damages property of another in an amount of $500 or more[.]" The offense is a class C felony. AS 11.46.482(b). Under related statutory provisions, the same conduct is punishable as a misdemeanor if the amount of damage is less than $500. *See* AS 11.46.484 (creating the class A misdemeanor of criminal mischief in the third degree for cases in which damage amounts to $50 or more); AS 11.46.486 (creating the class B misdemeanor of criminal mischief in the fourth degree for cases in which damage amounts to less than $50).

At Willett's trial, the primary issue in dispute was the amount of damage that Willett caused to Golding's car. To prove damages, the state presented estimates of repair costs amounting to between $1,497.50 and $1,517.50. Golding also testified that, although he was unsure of his car's current blue book value, the car had been appraised at $1,500 before being damaged. Golding further indicated that at some time after the incident involving Willett, the car's engine had broken down. At the time of trial, he was trying to sell the car for $400, with the engine broken.

At the conclusion of the state's case-in-chief, Willett moved for a judgment of acquittal, arguing that the state had failed to prove damages of $500 or more. Willett specifically claimed that it was incumbent on the state to prove that, as a result of the damage he inflicted, the fair market value of Golding's car had decreased by $500 or more. Willett contended that the state had produced only cost of repair evidence and had failed to establish either the pre-damage or post-damage fair market value of the car. On this basis, Willett asserted that the evidence was insufficient to allow the jury to find the requisite amount of damage. Acting Superior Court Judge Jane F. Kauvar denied Willett's motion for a judgment of acquittal and allowed the jury to rely on cost of repair as a measure of damages.

On appeal, Willett claims that Judge Kauvar erred in denying his motion for a judgment of acquittal. Willett contends:

> Given that the element of criminal mischief in the third degree required that the state provide evidence that the market value of the damage to the vehicle was in an amount greater than $500.00, Mr. Willett's motion for judgment of acquittal should have been granted. Reasonable persons would have to agree that the state failed to provide any evidence as to the market value of the 1979 Ford Fairlane at the time of the offense or that the difference in the market value of the vehicle before and after the offense exceeded $500.00. The only evidence which the state provided had to do with repair and replacement costs.

Willett's claim is premised on AS 11.46.-980(a), which provides:

(a) In this chapter [chapter 46 of the revised Alaska criminal code, which encompasses property crimes], whenever it is necessary to determine the value of property, that value is the market value of the property at the time and place of the crime unless otherwise specified or, if the market value cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime.

Willett argues that this provision governs the determination of damages under Alaska's criminal mischief statutes, requiring proof of diminution in fair market value unless the state is able to establish that market value "cannot reasonably be ascertained." *Id.*

By its own terms, however, AS 11.46.-980(a) requires the use of market value only when "it is necessary to determine the value of property" in connection with a property crime. Numerous provisions in the revised criminal code's chapter on property crimes specifically require determination of "the value of property." For example, the various degrees of theft call for a finding that the "value of property or services" stolen was of at least a certain dollar amount. *See* AS 11.46.120(a); AS 11.-46.130(a)(1), (4); AS 11.46.140(a)(1); AS 11.-46.150(a). Likewise, the offense of concealment of merchandise is subject to differing penalties, depending on "the value of the merchandise" concealed. *See* AS 11.46.220. As to these provisions, AS 11.46.980(a) would plainly require that value be established through evidence of the "market value of the property at the time and place of the crime unless ... market value cannot reasonably be ascertained." [1]

By contrast, Alaska's criminal mischief statutes do not, on their face, require the jury to determine the "value of property." The critical element for valuation under these provisions is not the value of the damaged property but rather the amount of damage caused by the defendant. Damage, unlike property, has no fair market value, and determination of the amount of damage thus does not directly involve calculation of property value. As the Colorado Supreme Court has stated in construing a criminal mischief statute similar to AS 11.46.482: "[T]he damage element in criminal mischief relates to economic loss caused by the knowing infliction of damage" to the property of another. *People v. Dunoyair,* 660 P.2d 890, 894 (Colo.1983).

One commonly used measure of the amount of damage to property is the property's resulting diminution in value—a measure that involves subtraction of post-damage value from pre-damage value. To the extent that the prosecution, in a case of criminal mischief, elects to rely on diminution in value to prove the amount of damage, then it seems that AS 11.46.980(a) would apply, requiring that the value of the property be determined by proof of its market value at the time of the offense.

Yet diminution in value is not the only accepted method of valuing property damage. An alternative, equally viable, and perhaps more direct measure of damage is reasonable cost of repair. *See, e.g., People v. Dunoyair,* 660 P.2d at 894–95. Both cost of repair and diminution in value have traditionally been regarded as acceptable methods of proving the amount of damage to property. For example, in dealing with harm to chattels, the Restatement of Torts allows either measure to be used, at the election of the person whose property has been damaged:

When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for

(a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs, and

---

**1.** Other jurisdictions construing the provisions similar to AS 11.46.980(a) have required the prosecution to offer affirmative proof that market value cannot be established before allowing the jury to consider replacement cost or other evidence of value. *See, e.g., State v. Jacquith,* 272 N.W.2d 90, 92–93 (S.D.1978).

(b) the loss of use.

Restatement (Second) of Torts § 928 (1976).

Section 928 of the Restatement has been interpreted flexibly, to allow the owner of damaged property recovery based either on reasonable cost of repairs or diminution in value. *See, e.g., Waseca Sand and Gravel, Inc. v. Olson,* 379 N.W.2d 592, 595 (Minn. App.1985). In some cases, the provision has been read to require the use of a combination of cost of repairs and diminution in value. Where, for example, repairs have not restored damaged property to its original value, recovery has been allowed for both cost of repairs and the difference in market value before the damage and after the repair. *See, e.g., Rosenfield v. Choberka,* 140 Misc.2d 9, 529 N.Y.S.2d 455, 458 (1988). Conversely, when the cost of repairs would materially exceed the original value of the property, recovery has generally been limited to diminution in value. *See, e.g., Hartley v. Schwab,* 564 S.W.2d 829, 831 (Tex.Civ.App.1978); *Automated Donut Systems, Inc. v. Consolidated Rail Corp.,* 12 Mass.App.Ct. 326, 424 N.E.2d 265, 270–71 (1981).

For present purposes, these authorities are significant in that they illustrate that cost of repair is a traditionally accepted measure of damage to property. Unlike diminution in value, cost of repair does not require that the value of the damaged property be determined.

Willett's claim that cost of repair is an impermissible measure of damage is based on AS 11.46.980(a), which requires that market value be used to determine the value of property, but only when "it is necessary to determine the value of property." This provision does not purport to choose diminution in value over cost of repair as the preferred method for proving the amount of damage to personal property. Because damage can be determined by cost of repair and, in turn, cost of repair can be established without determining the value of the damaged property, AS 11.46.980(a) does not apply when the prosecution relies on evidence of cost of repair to prove the amount of damage in a criminal mischief case.

This conclusion finds support in *State v. Ratliff,* 46 Wash.App. 325, 730 P.2d 716 (1986), a decision of the Washington Court of Appeals in a case factually indistinguishable from Willett's. Ratliff was convicted of malicious mischief in the second degree, a felony which, under applicable Washington law, required proof of damage exceeding $200. On appeal, Ratliff contended that the trial court erred in allowing the jury to determine the amount of damage by considering cost of repair. Relying on a Washington statute defining damages to "include[ ] any diminution in the value of any property," Ratliff argued that the legislature "intended that the only standard for measuring damages should be the diminution in the value of the property." *Id.* 730 P.2d at 718.

The Washington Court of Appeals rejected this argument and affirmed Ratliff's conviction. In declining to read the challenged statute as adopting diminution in value as the sole measure of damage, the court observed that "cost of repair has long been allowed as an element of damages...." *Id.*

Although we conclude that AS 11.46.-980(a) does not prevent the state from relying on cost of repair to prove the amount of damage in a criminal mischief case, we nevertheless caution that the statute is not wholly inapplicable to criminal mischief cases. As we have previously observed, when the state elects to prove the amount of damage in a criminal mischief case by showing diminution in value, then AS 11.-46.980(a) will require the prosecution to prove the market value of the property at the time of the offense.

Moreover, in cases in which the prosecution relies on cost of repair, there is a secondary aspect of the damage issue as to which AS 11.46.980(a) may have bearing. It has long been recognized that the cost of repairing damaged property cannot materially exceed the value of the property itself. *See, e.g., People v. Dunoyair,* 660 P.2d at 894–95. This principle has been viewed as implicit in the rule allowing recovery for reasonable cost of repair; repair costs materially exceeding the value of the damaged

property have simply been deemed unreasonable.[2]

Accordingly, in a criminal mischief case, when the defendant places in dispute the question of whether cost of repairs materially exceeds the value of the damaged property, it becomes "necessary to determine the value of" the property in question. AS 11.46.980(a) will apply in such circumstances, requiring "the market value of the property at the time and place of the crime" to be shown.

This aspect of the damages issue will have particular significance in criminal mischief cases involving property whose pre-damage value falls near the minimum dollar amount for the particular class of offense charged. In the present case, for example, AS 11.46.482(a)(1) sets the minimum amount of damage for second-degree criminal mischief at $500. The state's evidence indicated repair costs in the range of $1,500. However, if the pre-damage value of Golding's car had arguably been under $500, then Willett could have claimed that repair costs exceeding the value of the car should have been rejected as unreasonable. The prosecution would then have borne the burden of proving pre-damage value equalling or exceeding the $500 statutory minimum; in so doing it would have been required, under AS 11.46.980(a), to present evidence of market value.

■ Under the specific facts of Willett's case, however, this problem did not arise.

At trial, Golding testified, without objection, that his car had been appraised at $1,500 before Willett damaged it. In response, Willett produced evidence indicating that Golding's car may have had a lower pre-damage value. None of Willett's evidence, however, established the value to be less than $500; the lowest value established by Willett's evidence was $525.[3] Willett's primary theory of defense at trial was that the state had failed to prove the amount of damages to Golding's car because it had presented no evidence of post-damage value. Willett argued that cost of repair did not provide a fair measure of damages in the case because the estimated costs exceeded the pre-damage value of Golding's car. Alternatively, Golding argued that the state had presented unreasonably inflated cost of repair estimates, thus raising a reasonable doubt as to whether Willett had caused $500 or more in damages even under the cost of repair theory. Willett never contended, however, that the pre-damage value of Golding's car might have been less than $500.[4]

Since pre-damage value of property is the measure of damage when cost of repair exceeds value, and since all of the estimates of value at trial indicated a pre-damage value in excess of $500, sufficient evidence was presented to the jury to support a finding that the amount of damage exceeded the $500 minimum for second-degree criminal mischief, even assuming

2. As indicated in the commentary to Restatement of Torts § 928:

If it does not appear to a reasonable person to be prudent to repair or replace the damaged part, the damages are the full value of the subject matter at the time of the tort, less the junk value of the remains. Ordinarily, when the cost of repairs would be materially greater than the exchange value of the chattel before the harm, it would not be prudent to make the repairs. If, however, the chattel has peculiar value to the owner, as when a family portrait having substantially no exchange value has been harmed or when there would be serious delay or inconvenience in obtaining another chattel, it may be reasonable to make repairs at an expense greater than the cost of another chattel. If the harm consists of causing a chattel to be inaccessible, as when an automobile is mired in a ditch or a tool dropped down a well, damages include an amount

reasonably spent to restore the chattel to its original position.

3. Willett presented evidence that the high bluebook value for Golding's car was $1,100, while the low bluebook value was $525. Other evidence of value presented was Willett's admission on cross-examination that when Golding testified before the grand jury he had estimated the pre-damage value of his car at $1,200. Golding also acknowledged that he had obtained the car in trade for a pickup truck that he had purchased for $1,000.

4. On appeal, Willett contends that he did argue to the jury that the pre-damage value of Golding's car was less than $500. Our review of the final argument, however, including the portion specifically cited by Willett, establishes that he made no such argument.

the jury concluded that the cost of repairing Willett's damages exceeded the value of Golding's car. Moreover, given the uncontroverted evidence of pre-damage value in excess of $500 and Willett's failure to contend that the pre-damage value fell below $500, the state was under no obligation to produce evidence of post-damage value.

Because AS 11.46.980(a) did not preclude the state from relying on evidence of cost of repair, and because the cost of repair evidence in this case fully supported the conclusion that Willett caused damages in the amount of $500 or more to Golding's car, we conclude that Judge Kauvar did not err in denying Willett's motion for a judgment of acquittal.[5]

The conviction is AFFIRMED.

---

**5.** Willett has separately argued that the trial court improperly instructed the jury on the determination of damages by allowing it to rely on either cost of repair or diminution in market value. As Willett recognizes in his brief, this argument is based on essentially the same premise as his insufficient evidence claim: that AS 11.46.980(a) precluded the state from relying on evidence of cost of repair. Our finding that AS 11.46.980(a) did not bar the state from proving damages by evidence of cost of repair is thus dispositive of Willett's claim that his jury was improperly instructed.