948 P.2d 586

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Horatio Ernest PARDEE,
Defendant–Appellant.**

No. 18464.

Intermediate Court of Appeals of Hawai'i.

Oct. 22, 1997.

Ismael D. Santellan and John H. Wright, Honolulu, on the brief, for defendant-appellant.

Vickie L.S. Kapp, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

WATANABE, Judge.

In this appeal, Defendant–Appellant Horatio Ernest Pardee (Defendant) urges us to reverse his conviction of Criminal Property Damage in the Third Degree on two grounds: (1) the District Court of the First Circuit (district court) erroneously admitted

evidence of the cost to repair the property he damaged to satisfy the threshold amount for the offense of Criminal Property Damage in the Third Degree; and (2) there was insufficient evidence of Defendant's intent to commit the offense for which he was convicted. We affirm.

## BACKGROUND

On January 13, 1994, at approximately 8:00 p.m., Defendant, who was then a resident of the Pacific Grand Condominium [1] (the Pacific Grand or the building) at 747 Amana Street, in the City and County of Honolulu, got into a heated argument with Esther Fukuda (Fukuda), another resident of the building. After arguing for approximately two minutes in the first floor lobby of the building, Defendant left the building through the lobby's exit door and Fukuda proceeded to follow him.

It was undisputed at trial that after Defendant exited through the door, which opened outward, he turned around and pushed the door shut in the direction of Fukuda. Defendant explained that he did not want Fukuda following him out of the building so he "closed the door and pushed it, I guess, a little." However, Defendant claimed that Fukuda was standing in front of the door, holding it open, and she was the last person to close the door. Fukuda, on the other hand, testified that Defendant "punched the door" "with all his force," causing the door to go "crooked." The door, which was used for exit purposes only, had a closure mechanism that automatically returned the door to its proper resting position and restricted inward movement of the door. According to witnesses, Defendant's push was so forceful that the door hyper-extended beyond its proper resting position, causing the door to be lodged inward. As a result of the incident, Defendant was arrested for Criminal Property Damage in the Third Degree.

Defendant's trial commenced on July 22, 1994 and continued on August 8, 1994.

Trial testimony received on July 22, 1994 indicated that the exit door was a glass door with an alloy frame, which sustained the following damage on January 13, 1994:

1. Cracks around the key slots.

2. Two dimples or cracks in the glass door near the bottom.

3. The plunger of the lock was pushed past its metal stop so that the door was lodged open.

4. The "frame was cracked near the handle ... all the way through."

5. The door was "bent at the frame. The lock was damaged and it was unable to be secured."

The building's resident manager, Steven Christie (Christie), testified that it would cost $1,575 to repair the door, based on a bid from a company called Serv–Door.

When trial resumed on August 8, 1994, Christie was recalled to the witness stand. Christie testified that after the July 22, 1994 trial proceedings, he received estimates from three additional companies regarding the cost to repair the exit door and on August 4, 1994, had the door repaired by Jesse's Door and Glass Company (Jesse's) for $460. Christie testified that the entire door did not need to be replaced, just the door closure mechanism that automatically returns the door after it is pushed. Christie also testified that he had the door repaired on the advice of the prosecutor, but that he would have repaired the door eventually anyway but had been holding off until the outcome of the trial to see whether Defendant would have to pay for the repair. Christie also stated that the closure mechanism had to be replaced because finally "it went out completely." Christie testified that he did not see any cracks in the glass door itself, and that the crack in the door frame did not go "all the way through," so it was not necessary to replace the entire door.

By a judgment dated August 8, 1994, the district court found Defendant guilty of Criminal Property Damage in the Third Degree, sentenced him to probation for a period of one year, and ordered Defendant to pay

---

1. The testimony at trial was conflicting as to whether the name of the building was the Pacific Grand Condominium or the Pacific Grand Hotel/Apartment. However, Steven Christie, the building's resident manager, testified that the building's name was the Pacific Grand Condominium.

restitution in the amount of $460 to the Pacific Grand. This appeal followed.

## STANDARD OF REVIEW

■ A. The interpretation of a statute is a question of law, which we review *de novo*. *State v. Cornelio*, 84 Hawai'i 476, 483, 935 P.2d 1021, 1028 (1997). However, penal statutes are construed narrowly and considered "in the light of precedent, legislative history, and common sense." *Id.* (quotation marks and citations omitted).

■ B. A trial court's finding of guilt in a judge trial is reviewed under the substantial evidence test. Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *State v. Leung*, 79 Hawai'i 538, 540, 904 P.2d 552, 554 (App.1995) (quotation marks and citations omitted).

## DISCUSSION

I. *Whether the district court erred in allowing evidence of repair cost to satisfy the threshold amount for the offense of Criminal Property Damage in the Third Degree.*

Hawai'i Revised Statutes (HRS) § 708–822 (1993), which defines the offense of Criminal Property Damage in the Third Degree, reads:

(1) A person commits the offense of criminal property damage in the third degree if:

(a) The person recklessly damages property of another, without the other's consent, by the use of widely dangerous means; or

(b) The person intentionally *damages property* of another, without the other's consent, *in an amount exceeding $100*.

(2) Criminal property damage in the third degree is a misdemeanor.

(Emphases added.)

The Commentary to HRS § 708–820 to § 708–823, the statutory provisions defining criminal property damage in the first through fourth degrees, states, in relevant part, as follows:

These sections of the Code provide a unified treatment of offenses relating to property damage.... The offense of criminal property damage is divided into four degrees which represent gradations of penalty depending on: ... (3) the value of the property damaged.

\* \* \*

The determination of value is governed by § 708–801. When value cannot be determined according to the rules provided by subsections (1) and (2) of § 708–801, subsection (3) provides that the value shall be deemed to be not more than $50, therefore limiting conviction to the lowest degree of the offense when the value of property constitutes an element.

\* \* \*

... As one of the factors differentiating the seriousness of similar offenses, the value of property involved has traditionally been considered in theft offenses. It seems here no less applicable. Accordingly, theft and property damage offenses are correlated to the extent the value of the property involved is a governing factor.

... Subsection (1)(b) [of section 708–822] imposes misdemeanor liability for intentional property damage based in part on the value of the property involved. It is part of the differentiation referred to above and must be compared with §§ 708–821(1)(b) and 823.

Relying on the foregoing Commentary, Defendant contends that the standard to be applied in determining whether he damaged property "in an amount exceeding $100" is set forth in HRS § 708–801 (1993), which reads, in pertinent part:

**Valuation of property.** Whenever the value of property or services is determinative of the class or grade of an offense, or otherwise relevant to a prosecution, the following shall apply:

(1) ... [V]alue means the market value of the property or services at the time and place of the offense, or the replacement cost if the market value of the

property or services cannot be determined.

Defendant contends that because the prosecution did not show that the market values of the door and door closure mechanism could not be determined, the district court erred in allowing the replacement cost of the closure mechanism to satisfy the threshold amount for Criminal Property Damage in the Third Degree. We disagree with Defendant's argument for several reasons.

## A.

■■■■ First, HRS § 708–801, by its clear terms, applies only when "the value of property or services is determinative of the class or grade of an offense." For example, HRS § 708–801 would be applicable to property offenses such as Theft in the Third Degree, which occurs when a person takes "property or services the *value* of which exceeds $100[.]" HRS § 708–832 (1993) (emphasis added). In contrast, HRS § 708–822 does not, on its face, require a determination of the value of property; HRS § 708–822 refers to the *amount of damage* done by the offender, not the value of the property damaged. The Hawai'i Supreme Court has repeatedly held that in construing statutes, the fundamental starting point is the language of the statute itself. *State v. Ontai*, 84 Hawai'i 56, 59, 929 P.2d 69, 72 (1996). "[W]here the language of a statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (citation omitted). Moreover, our foremost obligation in construing a statute is to "ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Id.*

The term "value," while appearing in the theft statutes, does not appear in the criminal property damage statutes. Instead, the term "amount" is used to describe the threshold level of property damage. The obvious meaning of HRS § 708–822 is that courts are to look at the "amount" of damage caused by a defendant, not the "value" of the property at the time the incident occurred.

Other states have interpreted similar statutes the same way. In *Willett v. State*, 826 P.2d 1142 (Alaska App.1992), the defendant was convicted of criminal mischief in the second degree, which was committed when a person intentionally "damages property of another in an amount of $500 or more[.]" *Id.* at 1143. Alaska's criminal code provided that "whenever it is necessary to determine the value of property, that value is the market value of the property at the time and place of the crime unless otherwise specified or, if the market value cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime." *Id.* at 1144. The defendant argued that the state was required to prove the market value of the property damaged, or to show that the market value could not reasonably be ascertained. The Court of Appeals of Alaska disagreed, concluding that the criminal mischief statutes did not, on their face, require the jury to determine the value of property; "[t]he critical element for valuation ... is not the value of the damaged property but rather the amount of damage caused by the defendant." *Id.* The court stated that "[d]amage, unlike property, has no fair market value, and determination of the amount of damage thus does not directly involve calculation of property value." *Id.*

Similarly, the Supreme Court of Montana concluded that it is permissible to allow testimony of monetary values other than current market value to establish proof of criminal mischief. *State v. Palmer*, 207 Mont. 152, 673 P.2d 1234 (1983). In *Palmer*, the defendant, who had been illegally cutting trees on state property, argued that under Montana's criminal code, "value," for the purpose of establishing commission of felony criminal mischief, "means the market value at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of the replacement of the property within a reasonable time after the crime." *Id.* at 1238. The evidence produced at trial to establish criminal mischief consisted of costs of stump removal, replanting, and lost future tree growth. The court concluded that while the costs shown at trial were not within the scope of "value" as defined in the Montana criminal code, they were still admissible to

establish criminal mischief. *Id.* at 1238–39. The court noted that "[t]he term 'value,' . . . does not appear in the criminal mischief statute" and that "[o]bviously, the statute was carefully drafted to avoid reference to 'value,' because property damaged or destroyed by criminal mischief may not . . . have a market value or replacement cost." *Id.* at 1239.

We likewise conclude that the language of HRS § 708–822 refers to the amount of damage done by the defendant, not the value of the property involved.

## B.

We recognize that the Commentary to HRS § 708–822 states that the four degrees of offense of criminal property damage are differentiated by "the value of the property damaged" and that "[t]he determination of value is governed by [HRS] § 708–801." However, HRS § 701–105 (1993) specifically cautions that although "[t]he commentary . . . may be used as an aid in understanding the provisions of [the Hawai'i Penal] Code," it may not be used "as evidence of legislative intent." In the case of HRS § 708–822, we believe that the reference in the Commentary to the valuation standards set forth in HRS § 708–801 is fully explainable by the legislative history of HRS § 708–822.

When the Hawai'i Penal Code was first enacted into law in 1972, the offense of Criminal Property Damage in the Third Degree was defined, in relevant part, as follows: "A person commits the offense of criminal property damage in the third degree if: . . . [h]e [or she] intentionally damages the property of another without his [or her] consent, *the value of which* exceeds $50." [2] Therefore, the Commentary was consistent with the language of the statute. 1972 Haw. Sess. L. Act 9, § 1 at 98 (emphasis added). In 1973, however, the legislature amended the Hawai'i Penal Code, and the offense of Criminal Property Damage in the Third Degree was

revised to substitute "intentionally damages the property of another . . . *in an amount exceeding* $50" for the value of property language. 1973 Haw. Sess. L. Act 136, § 7 at 216 (emphasis ·added). No other changes were made to the elements of criminal property damage in the third degree. We do not believe the legislature amended the statute for no reason, and accordingly, believe that the legislature intended that the grade of the offense be governed by the amount of damage done to the property and not the value of the property at the time of the damage.

As a parenthetical note, we find it interesting that under section 220.3 of the Model Penal Code (MPC) [3] (1962), the grading for the offense of criminal mischief, which, like our criminal property damage offense, consolidates all forms of offenses relating to property damages into one generic offense, is based on the amount of pecuniary loss caused by the actor. Comment 8 to MPC § 220.3 explains that "[t]he judgment underlying the Model Code offense . . . is that the amount of harm caused is a more appropriate measure of the degree of liability that should be incurred for criminal mischief, coupled with some variation turning on the actor's culpability." According to comment 8, "[t]he only justification for grading according to the value of the property rather than the amount of harm would lie in the possibility that the actor's behavior created a risk of harm to the entire unit of property involved." However, "[a] presumption that the entire value of the property was endangered by any criminal mischief affecting the property would be extravagant, . . . and would result in overgrading the offense in many instances." *Id.* For example, "[o]ne who dents a fender by throwing rocks at a parked vehicle . . . hardly presents a serious risk that the entire value of the car will be lost." *Id.*

At the time the Hawai'i Penal Code was enacted in 1972, the State legislature rejected the MPC's approach of grading the criminal property damage according to the

---

**2.** The threshold amount of $50 was upped to $100 by Act 314, 1986 Haw. Sess. L. Act 314, § 62 at 624.

**3.** Model Penal Code § 220.3(2) provides, in relevant part:
> *Grading.* Criminal mischief is a felony of the third degree if the actor purposely causes pe-

cuniary loss in excess of $5,000, . . . . It is a misdemeanor if the actor purposely causes pecuniary loss in excess of $100, or a petty misdemeanor if he [or she] purposely or recklessly causes pecuniary loss in excess of $25. Otherwise criminal mischief is a violation.

amount of harm caused rather than the value of the property damaged. This deviation from the MPC is reflected in the Commentary on HRS §§ 708–820 to 708–823. When the legislature subsequently amended HRS § 708–822 in 1972, the amendments were consistent with the MPC approach.

Based on the clear and unambiguous language of HRS § 708–822, as well as the statute's legislative history, we conclude that the correct interpretation of HRS § 708–822 is that the offense is graded according to the amount of damage done, not the value of the property damaged.

## C.

■ Having concluded that the amount of damages is the determinative factor in grading a criminal property damage offense, we examine whether the district court properly allowed the cost of repairing the exit door as an appropriate method for determining the amount of damage done to the property.

The Supreme Court of Colorado stated that "[i]n cases of partial damage, the appropriate measure of economic loss will generally be the reasonable cost of repair or restoration." *People v. Dunoyair*, 660 P.2d 890, 895 (Colo.1983). The Alaska Court of Appeals stated that "[b]oth cost of repair and diminution in value have traditionally been regarded as acceptable methods of proving the amount of damage to property." *Willett v. State*, 826 P.2d 1142, 1144 (Alaska.Ct.App.1992). Furthermore, in civil cases, cost of repair has traditionally been an acceptable method of proving the amount of damage to property. The *Restatement (Second) of Torts* § 928 (1977) allows either the diminution in value of the property or the reasonable cost of repair or restoration, at the election of the person whose property was damaged.[4]

The replacement of the closure mechanism was a reasonable act of repair. Although the maintenance crew adjusted the door such that it could be secured and operated on a temporary basis, testimony at trial indicated that the door required further repair. The cost of such repair was a proper means of establishing the elements of the charge against Defendant.

## D.

Even if HRS § 708–801 were applicable, the prosecution sufficiently proved the market value of the door and door closure mechanism. "Fair market value" is defined as "[t]he amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." *Black's Law Dictionary* 597 (6th ed.1990).

The door was damaged on January 13, 1994. Christie testified that according to a bid received sometime before July 22, 1994, it would cost $1,575 to replace the door, and that on August 4, 1994, it cost $460 to replace the closure mechanism. Thus, the prosecution presented evidence that the fair market value of the door, had it been brand new, would have exceeded $100. Although the door had been in use for several years prior to the incident, the district court could have reasonably found that the door in its undamaged condition, even allowing for depreciation, had a value exceeding $100 on January 13, 1994.

II. *Whether there was sufficient evidence of Defendant's intent to damage the door to support the district court's conviction of Defendant.*

■ The district court found that "the State has met its burden of proof beyond a

---

4. The *Restatement (Second) of Torts* § 928 (1977) states:

Harm to Chattels

When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for

(a) the difference between the value of the chattel before the harm and the value after the harm or, at his [or her] election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any differ-

ence between the original value and the value after repairs, and

(b) the loss of use.

Furthermore, the commentary on section 928 explains that when due allowance is made for increase in value of the chattel as a result of new materials used, it is not necessary to deduct for the increase in value if the increase has not been realized by the owner; that is, if the owner does not sell the property while it retains its increased value, but continues to keep and use it, and the usefulness to him or her is not increased.

reasonable doubt to show that the defendant is guilty of Criminal Property Damage in the Third Degree." Criminal Property Damage in the Third Degree, under HRS § 708–822(1)(b), requires proof that the defendant intentionally damaged the property of another, without the other's consent, or did so recklessly by the use of a widely dangerous means. HRS § 708–822(1). "Intentionally" is defined as follows:

(a) A person acts intentionally with respect to his [or her] conduct when it is his [or her] conscious object to engage in such conduct.

(b) A person acts intentionally with respect to attendant circumstances when he [or she] is aware of the existence of such circumstances or believes or hopes that they exist.

(c) A person acts intentionally with respect to a result of his [or her] conduct when it is his [or her] conscious object to cause such a result.

HRS § 702–206 (1993). Thus, the State needed to prove that it was Defendant's conscious object to push the door in the wrong direction and to cause the resulting damage. The Hawai'i Supreme Court has stated that

since intent can rarely be proved by direct evidence, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the act is sufficient to establish the requisite intent. Thus, the mind of an alleged offender may be read from his [or her] acts, conduct and inferences fairly drawn from all the circumstances.

*State v. Sadino,* 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982) (citations omitted). The district court had the following evidence to consider: that Defendant and Fukuda were engaged in a heated argument just prior to the act; that Defendant had lived in the Pacific Grand for two years prior to the incident; that Defendant was aware that the lobby exit door was for exit only and opened outward; that Defendant was aware the exit door closes automatically; that following the incident, Defendant told Officer Daniels that Fukuda was responsible for the damages to the door; and that the door was not damaged prior to the incident. In evaluating such evidence, the trier of fact is the sole judge of the credibility of the witnesses and the weight of the evidence. *State v. Tripp,* 71 Haw. 479, 483, 795 P.2d 280, 283 (1990). Looking at the evidence in the light most favorable to the State, *id.,* a reasonable person could have concluded, as did the district court, that Defendant intentionally damaged the lobby exit door at the Pacific Grand.

## CONCLUSION

The district court did not err in allowing evidence about the cost of repair of the exit door to satisfy the threshold amount for determining liability of the offense of Criminal Property Damage in the Third Degree.

There was substantial evidence to support the district court's finding that Defendant intentionally damaged the lobby door of the Pacific Grand.

We affirm the judgment of the district court.