Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000593
31-OCT-2018
12:17 PM

NO. CAAP-16-0000593

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
WILLIAM ROY CARROLL, III, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 15-1-386)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant William Roy Carroll III (**Carroll**) appeals from the "Judgment of Conviction and Sentence" (**Judgment**) filed on July 27, 2016, in the Circuit Court of the Third Circuit (**Circuit Court**).[1] Carroll was convicted of one count of Theft in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 708-830(1) (2014)[2] and HRS § 708-831(1)(b) (2014),[3] and one

---

[1] The Honorable Glenn S. Hara presided.

[2] HRS § 708-830(1) provides:

§708-830 **Theft.** A person commits theft if the person does any of the following:
.(1)   Obtains or exerts unauthorized control over property. A person obtains or exerts unauthorized control over the property of another with intent to deprive the other of the property.

[3] At the time of Carroll's offense in 2015, HRS § 708-831(1)(b) provided:

§708-831   **Theft in the second degree.**   (1) A person commits the offense of theft in the second degree if the person commits theft:

(continued...)

count of Theft in the Third Degree in violation of HRS § 708-830(1) and § 708-832(1)(a) (2014).[4] [5]

On appeal, Carroll contends that the Circuit Court erred in: (1) denying his challenges to two prospective jurors for cause because the voir dire examination revealed that each had preconceived biases that threatened their ability to serve as impartial jurors; (2) denying Carroll's Motion for Judgment of Acquittal because the testimony elicited at trial on the valuation of items claimed to be stolen and damaged was insufficient to support a conviction in each charge; and (3) sentencing Carroll to the indeterminate term of incarceration of five years, because such sentence improperly penalized Carroll for exercising his right to a trial.

Upon careful review of the record and briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, as well as the relevant statutory and case law, we resolve Carroll's points of error as follows, and affirm.

---

[3](...continued)

. . .

(b) Of property or services the value of which exceeds $300;

[4] At the time of Carroll's offense in 2015, HRS § 708-832(1)(a) provided:

§708-832 **Theft in the third degree.** (1) A person commits the offense of theft in the third degree if the person commits theft:
(a) Of property or services the value of which exceeds $100; . . . .

[5] The Judgment and Mittimus filed on July 27, 2016, contain typographic errors as to Count 3, Theft in the Third Degree. The "Felony Information and Non-Felony Complaint" charged Carroll in Count 3 with Theft in the Third Degree under HRS § 708-832(1)(a). The Judgment, however, incorrectly references "HRS § 708-831(1)" for Count 3, Theft in the Third Degree, in the list of original charges and the charges under which Carroll was convicted. In turn, the Mittimus incorrectly references Count 3 by referring to "HRS § 708-832(a)(a)". The parties do not dispute that Carroll was convicted for Theft in the Third Degree under HRS § 708-832(1)(a). As set forth *infra*, we will remand this case for correction of these typographic errors in the Judgment and Mittimus.

2

Plaintiff-Appellee State of Hawai'i (**State**) charged Carroll with one count of Theft in the Second Degree, one count of Theft in the Third Degree and one count of Criminal Property Damage in the Second Degree in violation of HRS § 708-821(1)(b) (2014).[6] The charges against Carroll were in connection with an incident in Hilo, Hawai'i, on September 6, 2015, in which a bronze statue of King Kamehameha I was damaged, and a bronze spear connected to the statue was removed and later found with a four-foot pipe and forty-foot chain.

The case proceeded to jury selection and trial before the Circuit Court. During jury selection, Carroll challenged for cause the seating of Prospective Juror 35 (**Juror 35**) and Prospective Juror 48 (**Juror 48**). Carroll alleged that the voir dire examination had revealed preconceived biases of Juror 35 and Juror 48 that threatened their ability to sit as impartial jurors in the instant case.

Carroll's challenges were largely based on both jurors' exposure to pre-trial media coverage that had discussed the incident involving the statue, and their somewhat ambiguous responses regarding their ability to be impartial should they be selected as jurors. Carroll also questioned Juror 48's ability to be impartial based on her disclosure of prior discussions about the incident with her children awhile back, who had expressed their displeasure about the incident.[7] The Circuit

---

[6] HRS § 708-821(1)(b) provides:

> **§708-821 Criminal property damage in the second degree.** (1) A person commits the offense of criminal property damage in the second degree if by means other than fire:
>
> . . .
>
> (b)    The person intentionally or knowingly damages the property of another, without the other's consent, in an amount exceeding $1,500; . . . .

[7] During voir dire examination, Juror 48 indicated that her daughter and son-in-law work at the Hawaiian language immersion school Nāwahīokalani'ōpu'uiki, where her grandchildren attend as well. Juror 48 also (continued...)

Court allowed for separate questioning of prospective Jurors 35 and 48, respectively, to investigate whether they could be fair and impartial. Ultimately, the Circuit Court was satisfied with both jurors' overall responses, noting that each had expressed that they were fairly certain that they could disregard any prior information regarding the case, or any preliminary decisions concerning Carroll's alleged involvement. As such, Carroll's challenges to Juror 35 and Juror 48 for cause were denied. At the conclusion of jury selection, Carroll elected to use all three of his allotted peremptory challenges, two of which were used to excuse Juror 35 and Juror 48.[8]

During trial, the State presented testimony by Robert "Bobby" Yamada (**Yamada**) about the Kamehameha I statue. Yamada, who is a construction manager by trade and licensed general contractor, testified that he was part of the Kamehameha Statue Committee that installed the statue in its current place. As general contractor for the project, Yamada was familiar with the bronze statue and the attached bronze spear, which were the subject property in Counts 1 and 2.[9] After examination by both parties, the Circuit Court qualified Yamada to render an opinion as an estimator and general contractor over Carroll's objection. Yamada proceeded to offer testimony regarding his opinion of the replacement cost of the piece of the statue that was stolen, and the approximate cost to repair the portions of the statue damaged in the alleged incident.

---

[7](...continued)
noted that her son is a Native Hawaiian activist.

[8] At the conclusion of jury selection, Carroll requested the Circuit Court grant two additional peremptory challenges to the defense based on the prior challenges for cause of Juror 35 and Juror 48. The Circuit Court rested on its prior ruling, and denied Carroll's request for additional peremptory challenges.

[9] Count 3 charges Carroll with Theft in the Second Degree, and alleges that Carroll obtained or exerted unauthorized control over a bronze spear belonging to the Kamehameha Schools Alumni Association. Count 2 charges Carroll with Criminal Property Damage in the Second Degree, and alleges that Carroll, by means other than fire, intentionally and/or knowingly damaged the bronze statue of King Kamehameha belonging to the Kamehameha Schools Alumni Association.

The State also offered the testimony of Patrick Ehrenlechner (**Ehrenlechner**) to testify about the property involved in Count 3[10] of the instant case. Ehrenlechner testified that as Manager of Bayfront Motors, he was familiar with the pipe and chain that were allegedly taken from Bayfront Motors' property, and estimated its value at approximately $135.00. Ehrenlechner based his estimate on the original price he paid to purchase the pipe and chain.

At the conclusion of the State's case in chief, Carroll made a motion for judgment of acquittal, asserting that the State had failed to prove the necessary elements of each charge, specifically the requisite costs or value of the items allegedly damaged and stolen. The Circuit Court denied Carroll's motion, finding that the testimony elicited from the State regarding the valuation of the property was sufficient for the jury to consider in determining whether the elements of the charges were proven beyond a reasonable doubt. The jury subsequently found Carroll guilty of all charges.[11] On July 26, 2016, the Circuit Court sentenced Carroll to an indeterminate term of incarceration of five years.

**(1) Challenges to Jurors.** We review the Circuit Court's decision to pass a juror for cause under the abuse of discretion standard. State v. Kauhi, 86 Hawaiʻi 195, 197, 948 P.2d 1036, 1038 (1997). As to Carroll's first point of error, we conclude that the Circuit Court did not abuse its discretion in denying Carroll's motion to excuse Juror 35 and Juror 48 for cause.

---

[10] Count 3 charges Carroll with Theft in the Third Degree, and alleges that Carroll obtained or exerted unauthorized control over a four-foot pipe and forty-foot chain belonging to Bayfront Motors Incorporated.

[11] In a special interrogatory, the jury found that the State failed to prove beyond a reasonable doubt that Carroll did not commit Theft in the Second Degree in Count 1 and Criminal Property Damage in the Second Degree in Count 2 as part of a continuing and uninterrupted course of conduct, or with separate and distinct intents, rather than acting with one intention, one general impulse, and one plan to commit both offenses. Accordingly, Count 1 and Count 2 were merged, and the State proceeded to sentence Carroll under Count 1, Theft in the Second Degree, and Count 3, Theft in the Third Degree.

Generally, the trial court's exercise of its discretion to excuse or retain a prospective juror is governed by HRS § 612-7 (2016),[12] which includes excusing a prospective juror for "good cause." HRS § 612-7. Here, Carroll contends that good cause existed to excuse Juror 35 and Juror 48 because both had been exposed to adverse pre-trial media coverage and outside information that impaired their ability to serve as impartial jurors in this case.

The constitutional guarantee of a right to a trial by an impartial jury requires the jury to be "substantially free from the biasing effects of inflammatory pre-trial publicity". State v. Keohokapu, 127 Hawai'i 91, 101-102, 276 P.3d 660, 670-671 (2012)(citations omitted). "Once the accused claims that his or her right to a fair trial has been jeopardized by external influences, such as publicity, on the jury, the court must determine whether the influences rise to the level of being substantially prejudicial." Id. at 102, 276 P.3d at 671. If it does not rise to such level, the trial court is under no duty to interrogate the jury. Id. "Where, however, the court determines that outside influences are of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice arises." Id. (citations omitted). The trial judge would then be "duty-bound to investigate the totality of circumstances to determine the impact of the outside influence on the jury." Id.

Here, the media coverage that both jurors referred to was nearly a year old, and consisted of mostly non-prejudicial information (i.e. the location the bronze spear was recovered, the condition of the spear, etc.), and mention that a homeless man may have been responsible for the incident. Such media

---

[12] HRS § 612-7 provides:

> §612-7 **Excused when, for cause.** A prospective juror shall not be excused by a court for slight or trivial cause, but only when it appears that jury duty would entail a serious personal hardship, or that for other good cause the prospective juror should be excused either temporarily or otherwise.

coverage is primarily factual, as opposed to being a "barrage of inflammatory publicity immediately prior to trial amounting to a huge . . . wave of public passion". See id. at 103, 276 P.3d at 672. Juror 48's disclosure of her prior conversations of the case with her children is of similar character. Juror 48 had indicated that her children were very upset that the statue had been damaged, however as articulated by the Circuit Court, such sentiment was not different from how most members of the public may have felt about the incident. Accordingly, none of the outside influences on Jurors 35 and 48 rose to the level of presumed prejudice.

The record also does not show that Jurors 35 and 48 had exhibited "actual partiality or hostility that could not be laid aside" such that actual prejudice existed. See id. at 104, 276 P.3d at 673. Although both jurors had offered ambiguous, and at times contradictory, responses regarding their ability to act impartially, both eventually, and to the Circuit Court's satisfaction, expressed a degree of certainty that they were able to perform as competent jurors. Juror 48 had indicated to the Circuit Court that she was ninety percent certain that she could set aside any identified bias that she may have if she were selected. Juror 35 similarly expressed that she was eighty percent certain that she could do the same. Also, in the State's examination of Juror 48, she had expressly indicated that she would find the defendant innocent if she were asked to decide the case prior to any presentation of evidence. In response to the same inquiry by defense counsel, Juror 35 also explicitly stated that she would find Carroll innocent in such circumstance.

Accordingly, we conclude that the Circuit Court did not abuse its discretion in denying Carroll's challenges to Juror 35 and Juror 48 for cause. Additionally, because we conclude that there was no abuse of discretion, we need not reach the inquiry of whether Carroll's right to exercise a peremptory challenge was denied. See State v. Iuli, 101 Hawai'i 196, 205, 65 P.3d 143, 152 (2003).

**(2) Motion for Judgment of Acquittal.** The standard of review as to a motion for judgment of acquittal is "whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." State v. Jhun, 83 Hawai'i 472, 481, 927 P.2d 1355, 1364 (1996). Carroll contends that the Circuit Court erred in denying his motion for Judgment of Acquittal because the State failed to adduce sufficient evidence of the monetary value element for each charge, specifically the value of the properties stolen and/or damaged in the instant offenses. We disagree.

For the Theft in the Second Degree charge, the State had to prove the value of the stolen portion of the bronze spear exceeded $300.00. See HRS § 708-831(1)(b). "[V]alue means the market value of the property or services at the time and place of the offense, or the replacement cost if the market value of the property or services cannot be determined." HRS § 708-801(1) (2014)(emphasis added).[13] At trial, the State offered the testimony of Yamada, who was familiar with the materials and costs of the statue, and was involved in both its installation and repair. The Circuit Court allowed Yamada to render an opinion as a licensed general contractor and estimator, and he accordingly offered testimony of his opinion of the replacement cost and repair cost of the portion of the bronze spear that was allegedly stolen, both of which exceeded the statutory minimum value required to find Carroll guilty of Theft in the Second Degree.

---

[13] HRS § 708-801(1) provides:

§708-801 **Valuation of property or services.** Whenever the value of property or services is determinative of the class or grade of an offense, or otherwise relevant to a prosecution, the following shall apply:
(1) Except as otherwise specified in this section, value means the market value of the property or services at the time and place of the offense, or the replacement cost if the market value of the property or services cannot be determined.

Although Yamada was not qualified as an expert in the field of fine arts or sculptures, expert testimony is not required to establish the value of stolen property. See State v. Kahele-Bishop, No. CAAP-14-0001361, 2017 WL 430844, at *6 (Hawai'i App. Jan. 31, 2017); See also State v. Thorp, No. CAAP-13-0000414, 2014 WL 4914623, at *1 (Hawai'i App. Sept. 30, 2014)(rejecting argument that the prosecution was required to call an expert appraiser to establish the value of stolen water pipes to prove value element in Theft in the Second Degree). Accordingly, Yamada's testimony of both the replacement cost and repair cost of the stolen bronze spear was sufficient evidence to support Carroll's conviction of Theft in the Second Degree in Count 1.

Although Count 2 eventually merged with Count 1, we similarly conclude that there was sufficient evidence presented at trial to support Carroll's conviction of Criminal Property Damage in the Second Degree. For this offense, the State was required to establish that, by means other than fire, Carroll had intentionally or knowingly damaged the property of another, without the other's consent, in an amount exceeding $1,500.00. HRS § 708-821(1)(b). We have previously held that evidence of the cost of reasonable repairs is an appropriate means to establish the amount of damages as an element of the crime of criminal property damage. State v. Pardee, 86 Hawai'i 165, 170, 948 P.2d 586, 591 (App. 1997). Here, Yamada estimated the repair cost for the damages inflicted to the body of the statue at $3,500.00. Such testimony was sufficient evidence to support Carroll's conviction of Criminal Property Damage in the Second Degree in Count 2.[14]

We also conclude that there was sufficient evidence to support a finding as to the value of the stolen pipe and chain, to convict Carroll of Theft in the Third Degree in Count 3. For this offense, the State was required to establish that the value of the stolen pipe and chain exceeded $100.00. See HRS

---

[14] We note that the actual replacement and repair costs to both the spear and the statue could not be ascertained at trial because the services and materials used to restore the statue were volunteered and donated.

9

§ 708-832(1)(a). At trial, the State offered the testimony of Ehrenlechner, the Manager of Bayfront Motors, to testify about the approximate market value of the stolen property. Ehrenlechner estimated the aggregate value of the stolen pipe and chain at approximately $135.00 based on the price that he had originally paid for the materials in 2010 or 2011. Although Ehrenlechner's estimate of the pipe and chain was not based on the current market price, it was still adequate evidence for the trier of fact to determine whether the stolen property's value exceeded $100.00 at the time of the offense. See Kahele-Bishop, 2017 WL 430844 at *5-6(holding that complainant's testimony that the contents of stolen bag were purchased for more than $300 was sufficient to prove the value element in Theft in the Second Degree).

Accordingly, we conclude that the evidence presented at trial on the value of the stolen portion of the bronze spear, the damage inflicted to the statue, and the value of the stolen pipe and chain, taken in the light most favorable to the State, was sufficient to support a prima facie case so that a reasonable mind might fairly conclude Carroll's guilt as to all three counts beyond a reasonable doubt. See Juhn, 83 Hawai'i at 481, 927 P.2d at 1364.

**(3) Sentencing.** Finally, we conclude that the Circuit Court did not abuse its discretion in sentencing Carroll to the indeterminate five-year term of incarceration. As articulated by the Supreme Court of Hawai'i in State v. Mundon,

> A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

121 Hawai'i 339, 349, 219 P.3d 1126, 1136 (2009)(citations omitted). Here, no plain and manifest abuse of discretion was

10

committed by the Circuit Court in its Judgment.  In sentencing Carroll, the Circuit Court considered a variety of factors, including the sentencing factors set forth in HRS § 706-606 (2014),[15] the State and Carroll's arguments on sentencing, and the nature of the offense, and then determined that the indeterminate five-year term of incarceration was the appropriate sentence.

Carroll's contention that the Circuit Court had penalized him for exercising his constitutional right to a trial by sentencing him to the indeterminate five-year term of incarceration is unsupported by the record and without merit. The Circuit Court's discussion with Carroll regarding the possible consequences of rejecting the State's plea agreement prior to trial was permissible, and an "attribute of any legitimate system which tolerates and encourages the negotiation of pleas." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). Accordingly, the Circuit Court did not abuse its discretion in sentencing Carroll to the indeterminate five-year term of incarceration in its Judgment.

---

[15] HRS § 706-606 provides:

§706-606 **Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:
  (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;
  (2)   The need for the sentence imposed:
        (a)   To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
        (b)   To afford adequate deterrence to criminal conduct;
        (c)   To protect the public from further crimes of the defendant; and
        (d)   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3)   The kinds of sentences available; and
  (4)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

11

Therefore, the Circuit Court of the Third Circuit's "Judgment of Conviction and Sentence", filed July 27, 2016, is affirmed, except that we remand the case to the circuit court to correct the typographic errors contained in the Judgment and Mittimus as referenced in footnote 5 herein.

DATED: Honolulu, Hawai'i, October 31, 2018.

On the briefs:

Keith S. Shigetomi,
for Defendant-Appellant.

Ha'aheo M. Kaho'ohalahala,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge