# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68031-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY CLELL WOODS, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: <u>May 6, 2013</u> |
| | ) | |

COX, J. – Jeffrey Woods was convicted of third degree malicious mischief. On appeal, he claims that the circumstances of his case did not permit a jury instruction that included a permissive inference of malice. He further asserts that he received ineffective assistance of counsel because his counsel did not object to this instruction. He also contends that there was insufficient evidence to support his conviction. Lastly, he argues that the trial court lacked authority to impose alcohol-related community custody conditions. We disagree with all claims and affirm.

Angie and James Montgomery[1] own a motel in Sedro-Woolley, Washington. In 2010, Angie rented a room to Woods. Woods later rang the motel office bell because he wanted a key to his room. Angie, who was sleeping in a room connected to the office, woke up and gave Woods a key. Woods did

---

[1] To avoid confusion, we refer to the parties with the last name Montgomery by their first name.

not leave right away, so she opened the office door and helped him out. Woods left, and Angie went back to sleep.

Shortly thereafter, Woods rang the bell again and wanted to be let back into the office. At that point, Angie and her husband, James, went to the office and could see Woods outside. James testified that he talked to Woods through a service window, and Woods told him an animal was chasing him. James did not see any animal.

Angie and James testified that Woods tried to open the office door multiple times and tried to climb through the service window to get into the office. But they did not let him in. Angie called the police.

Officer Paul Eaton responded to the call first, and Officer Oscar Matthew Vollans arrived later. The officers tried to apprehend Woods, but he resisted. In trying to apprehend Woods, the officers used physical force, a stun gun, and pepper spray. At one point, the officers trapped Woods in an area near the motel office. Woods broke one of the motel office's windows and jumped through it. He eventually left the office, and the officers were able to apprehend him.

Officer Vollans drove Woods to a hospital. An emergency room physician testified that Woods tested positive for amphetamines.

The State charged Woods with two counts of third degree assault of a law enforcement officer, possession of methamphetamine, first degree criminal trespass, and third degree malicious mischief. A jury convicted Woods for the assault of Officer Vollans, criminal trespass, and malicious mischief. The jury did

not reach a verdict for the assault of Officer Eaton and possession of methamphetamine.

The trial court sentenced Woods to 14 months of confinement for the assault, concurrent with 364 days for the criminal trespass and malicious mischief offenses. The trial court also imposed 12 months of community custody for the assault. As part of community custody, the trial court ordered the following conditions: "Do not possess or consume alcohol and do not frequent establishments where alcohol is the chief commodity for sale."

Woods appeals the third degree malicious mischief conviction and the community custody condition in his judgment and sentence.

## JURY INSTRUCTION

Third degree malicious mischief requires proof that a person "[k]nowingly and maliciously cause[d] physical damage to the property of another."[2] For the first time on appeal, Woods challenges Jury Instruction 23, which provided the definition of malice:

> Malice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person.
>
> **Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another.**[3]

Woods asserts that the trial court erred by including the permissive inference in the second part of the malice definition.

---

[2] RCW 9A.48.090(1)(a).

[3] Clerk's Papers at 93 (emphasis added).

Under RAP 2.5(a)(3), we review a claim of error not raised below only where the error is manifest and affects a constitutional right. To establish that the error was manifest, a defendant must make a plausible showing that the error had a practical and identifiable consequence in the trial of his or her case.[4]

Here, Woods does not make any argument that the error was manifest. Since Woods bears the burden of showing that the error was manifest, we will not review this assignment of error in this context.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Woods argues, in the alternative, that his counsel was ineffective because counsel failed to object to the permissive inference in Jury Instruction 23. We disagree.

"A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal."[5]

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his trial.[6] The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the

---

[4] State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

[5] State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 117 (2009).

[6] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

4

challenged conduct.[7] Failure on either prong defeats a claim of ineffective assistance of counsel.[8]

Here, Woods argues that his counsel was deficient because counsel failed to object to Jury Instruction 23. He contends that the circumstances in this case did not support the part of the instruction containing the permissive inference of malice.

"A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion."[9] "A permissive inference is valid when there is a 'rational connection' between the proven fact and the inferred fact, and the inferred fact flows 'more likely than not' from the proven fact."[10]

In State v. Ratliff, this court considered "whether the trial court erred in instructing the jury that it could infer malice 'from an act done in willful disregard of the rights of another.'"[11] There, police officers left Ratliff in the back of police van for approximately 15 minutes unattended.[12] When the police officers

---

[7] McFarland, 127 Wn.2d at 336.

[8] Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

[9] State v. Ratliff, 46 Wn. App. 325, 330, 730 P.2d 716 (1986).

[10] Id. at 330-31 (quoting County Court of Ulster County v. Allen, 442 U.S. 140, 167, 99 S. Ct. 2213, 2230, 60 L. Ed. 2d 777 (1979); Leary v. United States, 395 U.S. 6, 36, 89 S. Ct. 1532, 1548, 23 L. Ed. 2d 57 (1969); State v. Johnson, 100 Wn.2d 607, 616, 674 P.2d 145 (1983), overruled on other grounds, State v. Bergeron, 105 Wn.2d 1, 711 P.2d 1000 (1985)).

[11] 46 Wn. App. 325, 329-30, 730 P.2d 716 (1986).

[12] Id. at 326.

5

returned, they found that Ratliff had broken the window between the holding area and the cab of the van.[13] They saw that the radio was damaged and an officer's jacket was pulled through the window.[14] Ratliff was convicted of second degree malicious mischief.[15]

This court explained that the jury instruction was proper because there was a "rational connection" between the proven facts of that case and an inference of malice:

> Ratliff admitted on cross examination that he continued to pull radio wires loose after he did not succeed in bringing the radio towards him. He stated that he continued to pull at the wires because he "was frustrated." Furthermore, the officers testified that one of their jackets had been pulled through the window into the prisoner holding area, a situation more consistent with malicious intent than with Ratliff's claims that he wanted to use the radio to call help.[16]

In conclusion, this court stated that "the inference of malice flows more likely than not from the conduct of the defendant."[17]

Here, the same conclusion is appropriate. The motel owners testified that Angie called the police because Woods wanted to enter the motel office, but they would not let him in. After the police officers arrived and were trying to apprehend Woods, James testified that Woods asked him to open the window. James told him that he could not do that. After James refused to open the

---

[13] Id.

[14] Id.

[15] Id. at 327.

[16] Id. at 331.

[17] Id.

window, Woods broke the window. Officer Vollans then shot pepper spray at Woods, and Woods jumped through the broken window.

Based on this testimony, an inference of malice flows more likely than not from Woods's actions. He broke the motel office window after the motel owners refused to let him into the office.

Woods argues that his actions do not show that he acted maliciously. He asserts that is "much more likely [he] was trying to escape from the officers' aggressive actions" or that he "was desperately trying to defend himself." While an inference that Woods was trying to escape or defend himself may be made from his actions, this inference does not negate a separate inference of malice.

In sum, there is a rational connection between the evidence of Woods's actions and an inference of malice. The trial court did not err when it included the permissive inference in the malice definition. Thus, Woods's counsel was not deficient for failing to object to the jury instruction.

We need not address the prejudice prong of Woods's ineffective assistance of counsel claim, given the lack of deficient performance by his counsel.[18] This claim fails.

## SUFFICIENCY OF THE EVIDENCE

Woods argues that there was insufficient evidence to support his third degree malicious mischief charge conviction. Specifically, he contends that the State did not prove that he acted maliciously when he broke the motel office window. We disagree.

_____

[18] See Strickland, 466 U.S. at 697; Foster, 140 Wn. App. at 273.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact could have found that each element of the crime was proved beyond a reasonable doubt.[19] We draw all reasonable inferences from the evidence in the State's favor and interpret the evidence most strongly against the defendant.[20] We assume "the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[21] We defer to "the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."[22]

As explained above, third degree malicious mischief requires proof that a person "[k]nowingly and maliciously cause[d] physical damage to the property of another."[23] "Maliciously" is defined as "evil intent, wish, or design to vex, annoy, or injure another person."[24] "'Malice' may be inferred from an act done in willful disregard of the rights of another . . . ."[25]

Here, viewing the evidence in the light most favorable to the State, the evidence was sufficient to support a finding that Woods maliciously broke the motel office window. This act occurred after the motel owners refused to let him

---

[19] State v. Drum, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010).

[20] State v. Joy, 121 Wn.2d 333, 339, 851 P.2d 654 (1993).

[21] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[22] State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000).

[23] RCW 9A.48.090(1)(a).

[24] RCW 9A.04.110(12).

[25] Id.

into the office. Woods acted with an intent, wish, or design to vex or annoy the motel owners. As noted above, this intent can be inferred from the act itself and because it was done in willful disregard of the motel owners' rights.

Woods argues that although the motel owners "repeatedly denied him entry to the office, Woods did no damage in response to the refusals." But all reasonable inferences must be drawn in favor of the State.[26] A reasonable inference is that Woods broke the window in response to their refusals.

Woods also contends that the "timing of [his] desperate act of jumping through the window indicates the act was an automatic response to danger rather than one designed to vex or annoy the motel owners." But even if Woods primarily broke the window as a reaction to danger, he does not cite any authority to support his suggestion that malice must be his exclusive or primary intent. Thus, this argument is not persuasive.

In sum, the State presented sufficient evidence to prove that Woods maliciously broke the motel office window.

## COMMUNITY CUSTODY CONDITIONS

Woods argues that the trial court exceeded its statutory sentencing authority when it imposed the following community custody conditions in his judgment and sentence: (1) do not "possess . . . alcohol," and (2) do not "frequent establishments where alcohol is the chief commodity for sale."[27] He contends that these conditions were not authorized by law because there was

---

[26] See Salinas, 119 Wn.2d at 201.

[27] Id. at 17 (citing Clerk's Papers at 166).

some evidence that he was not drinking alcohol on the day of the incident.[28] We disagree.

As an initial matter, the parties agree that the trial court had the statutory authority to prohibit Woods's consumption of alcohol.[29] Thus, we need not review this condition.

Illegal or erroneous sentences may be challenged for the first time on appeal.[30] We review a trial court's imposition of a crime-related community custody condition for abuse of discretion.[31] The trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[32]

A court may impose only a sentence that is authorized by statute.[33] Under RCW 9.94A.703(3)(f), a court may order an offender to "[c]omply with any crime-related prohibitions." A crime-related prohibition is an order that prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[34]

---

[28] Id.

[29] Respondent's Brief at 25-26 (citing State v. Jones, 118 Wn. App. 199, 76 P.3d 258 (2003)); Reply Brief of Appellant at 1.

[30] State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

[31] State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993).

[32] Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

[33] State v. Barnett, 139 Wn.2d 462, 464, 987 P.2d 626 (1999).

[34] RCW 9.94A.030(10).

Here, Woods testified at trial that he had consumed "quite a few beers" before the incident. This testimony shows that there was some evidence that alcohol played a role in his offenses. Thus, the trial court did not abuse its discretion when it prohibited him from possessing alcohol and frequenting establishments where alcohol is the chief commodity for sale.

Woods argues that there was "scientific evidence" that "definitively establishe[d]" that he had not been drinking alcohol. He cites portions of his trial testimony referring to a urine test. But the medical document referred to in this testimony is not in the record. Thus, we cannot review this document.

Further, based on Woods's testimony, the urine test results are unclear. During the State's cross-examination of Woods, Woods gave the following testimony:

> Q. Okay. And have you heard Dr. Swenson testify yesterday your urine was checked for drugs; is that right?
>
> A. Yeah. Well, I guess they got my urine out of the catheter while they started giving me fluids. My body functions were shutting down.
>
> Q. They checked your urine. And isn't it correct that you were zero for alcohol?
>
>> MR. RIGUELME [defense counsel]: Objection, Your Honor. I don't think Mr. Woods has testified that he has personal knowledge of this.
>>
>> MS. DYER [prosecutor]: Your Honor, this is impeachment. He's testified he drank several beers. This indicates he had no alcohol in his system. He indicated he is familiar with these records.
>>
>> THE COURT: Overruled.
>
> Q. Is that what that indicates? That means you can answer.

11

A. It says I was out of body fluids. I had been drinking all day.[35]

According to this testimony, it is not clear what the urine test revealed. But it is clear that Woods insisted that he consumed alcohol before the incident.[36] We do not review on appeal the trial court's credibility determinations.[37]

Since Woods's testimony demonstrates that alcohol played a role in his offenses, the trial court did not abuse its discretion when it imposed community custody conditions related to alcohol.

Woods makes other arguments regarding Officer Eaton's testimony that he appeared intoxicated and the time that elapsed between the incident and urine test. But these arguments are not helpful given Woods's testimony.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

---

[35] Report of Proceedings (Oct. 5, 2011) at 108.

[36] Compare id. with Report of Proceedings (Oct. 5, 2011) at 62, 105.

[37] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).