[No. 11017–9–I.   Division One.   April 25, 1983.]

THE CITY OF BELLEVUE, *Respondent,* v. JEAN ANN KINSMAN, *Appellant.*

---

*Zsa Zsa DePaolo* and *Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Susan Irwin, City Attorney,* for respondent.

DURHAM, A.C.J.—Jean Ann Kinsman appeals the judgment on her conviction for malicious mischief, principally challenging the use of the jury instruction defining malice.

On October 16, 1981 at about 10 p.m., Kinsman left her 3–year–old son, Mark, at the Bellevue home of her brother, Roger Lange, and his fiancee, Kathy, so that she could go out for a few hours. Roger and Kathy had taken care of Mark often in the past.

Shortly after 2 a.m., the house was locked and the lights were turned out. A few minutes later, Kinsman arrived at the house. She had consumed a number of drinks during the evening. Kinsman knocked on the door for several minutes and received no response. After leaving briefly to talk to her date in his car, she returned and began pounding on the door. By this time, Kathy heard Kinsman's pounding, but hesitated to open the door. She thought Kinsman was "a little out of control", and she heard a man's voice which she did not recognize.

Kinsman grew tired and became increasingly concerned

for Mark's safety. She used additional force on the door, until she finally opened it.[1] Kinsman confronted Kathy and struck her in the face. Eventually, Kinsman was forced out of the house without Mark.

Officer Robert Phelan of the Bellevue Police Department arrived in response to a call from Kathy. At trial, Phelan described Kinsman's behavior as "uncontrollable" and concluded that she "had a very strong odor of intoxicants about her person."[2] Officer Phelan found that Kinsman was unable to care for herself, and decided that she should not be allowed to leave with Mark.

Several weeks later, Roger and Kathy pressed charges against Kinsman for one count of assault and one count of malicious mischief. Kinsman was convicted on both counts in Bellevue District Court. She appealed these convictions to King County Superior Court. A jury found Kinsman guilty of malicious mischief[3] and not guilty of assault.

Kinsman argues that the trial court erred in giving instruction 9, which states:

Malice and maliciously mean an evil intent, wish, or

---

[1] Jean testified that she merely hit the door with her hip. Kathy and Roger claim that the door was kicked open. The damage done to the door remained at issue throughout this trial. There is no question that it was broken by Jean's action. It is unclear, however, whether much force was necessary to accomplish this, in light of the door's overall condition. Roger eventually replaced the door, and, unfortunately, burned it and the jamb several weeks later.

[2] The court instructed the jury on the defense of intoxication in instruction 10. The jury did not find, however, that Kinsman's drinking on the evening of October 16 undermined her ability to form the requisite criminal intent for malicious mischief. See State v. Mriglot, 88 Wn.2d 573, 576–77, 564 P.2d 784 (1977). Nor did Kinsman claim that she did not know what she was doing or that she was unable to determine right from wrong. In fact, she testified that it would be out of character for her to become aggressive and violent when drinking.

[3] Jean Kinsman was convicted under Bellevue City Code 10.12.090:
"A. A person is guilty of malicious mischief if he knowingly and maliciously causes physical damage to the property of another, public or private under circumstances not amounting to malicious mischief in the first or second degree as defined by RCW 9A.48.070 and RCW 9A.48.080.
"B. Malicious mischief is a gross misdemeanor if the damage to the property is in an amount exceeding fifty dollars; otherwise, it is a misdemeanor."

design to vex, annoy, or injure another person. Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse.

She claims that the use of this instruction allowed the jury to improperly infer malice. We agree.

It is axiomatic that the burden rests with the State to prove every element of the crime charged, beyond a reasonable doubt. *State v. Roberts,* 88 Wn.2d 337, 340, 562 P.2d 1259 (1977). It is permissible, in turn, for the State to use evidentiary presumptions as an aid in establishing the elements of a crime. *State v. Roberts, supra.* However, while presumptions may *assist* the State in satisfying the requisite elements of a crime, they may not be used to *create* automatic inferences which circumvent the facts in a given case. In *State v. Blight,* 89 Wn.2d 38, 44, 569 P.2d 1129 (1977), the Supreme Court delineated the constitutional implications of this distinction:

> [W]e have recognized that criminal statutory presumptions which supply some proof of the element of a crime *may* operate to shift the burden of proof from the State to the defendant and thus deny him due process of law. We also have said that a statutory presumption will be deemed unconstitutional if the State does not retain the burden of proving, beyond a reasonable doubt, all elements of the crime. Consequently, we have held that to meet the test of constitutionality the presumed fact must flow beyond a reasonable doubt from the proven fact upon which it is made to depend. *State v. Odom,* 83 Wn.2d 541, 548, 520 P.2d 152 (1974).

Furthermore, the court explained that

> we have proceeded on a case–by–case basis, considering the manner in which each presumption encroaches upon a defendant's due process rights under the facts of the particular case. This is necessary because not every presumption affects due process rights in the same way. The variances in the "due process" impact may be caused by the nature of the presumption. Even different facts may have an impact upon our announced general rule.

*Blight,* at 45.

■ Following *Blight,* this court had the opportunity to assess a malice instruction in *State v. Johnson,* 23 Wn. App. 605, 596 P.2d 1047 (1979). There, the defendant was charged with and convicted of first degree arson. Johnson testified that the fire started accidently, and that he did not extinguish it because he thought there were two men outside his door planning to kill him. *Johnson,* at 608. We found that the State's evidence could establish "'an act wrongfully done without just cause or excuse'" or "'an omission of duty betraying a willful disregard of social duty'".[4] Nonetheless, we also determined that simply because Johnson should have prevented the fire, it did not automatically follow that he caused the fire with "'an evil intent, wish, or design to vex, annoy, or injure another person.'" *Johnson,* at 608. Accordingly, we held that the instruction violated due process, since it permitted "a conviction under facts which, if believed, could not be used to infer malice." *Johnson,* at 608. *See also State v. Simmons,* 28 Wn. App. 243, 622 P.2d 866 (1980); *State v. Flowers,* 30 Wn. App. 718, 721–23, 637 P.2d 1009 (1981).

■ Turning to the facts of this case, the record reveals scant evidence that Kinsman had an evil intent, wish, or design to vex, annoy, or injure anyone. Taking into account common experience and the evidence at trial, *Simmons,* at 247, it is just as likely that she was impelled by fear or concern for her son's safety as by any malevolence toward anyone in her brother's home. Thus, instruction 9 violated due process by permitting a conviction under facts which, if believed, did not necessarily imply malice. The State was erroneously relieved of its burden of proving the element of malice. *State v. Roberts, supra.*

The WPIC 2.13 note on use advises that the second sentence of the malice instruction should only be used as

---

[4]The instruction at issue in *State v. Johnson,* 23 Wn. App. 605, 606, 596 P.2d 1047 (1979) included the third possibility for inferred malice: "an act or omission of duty betraying a willful disregard of social duty." WPIC 2.13 provides this additional option.

applicable. This sentence allows the inference of malice to be made from "an act wrongfully done without just cause or excuse". Given the possibility that a jury could improperly label negligent behavior as malicious under the facts of this case, we find the second sentence to be inapplicable. At best, the sentence was confusing; at worst, it was contradictory.

Because of the erroneous use of the malice instruction, we need not reach Kinsman's other assignments of error.

We reverse and remand for a new trial.

WILLIAMS and RINGOLD, JJ., concur.