[No. 16265-9-I. Division One. December 24, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH ALAN RATLIFF, *Appellant*.

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

COLEMAN, J.—Keith Ratliff appeals his conviction for malicious mischief in the second degree. We affirm.

On October 9, 1984, Officers Doucet and Harris were in charge of a police van designed to transport persons to the station house. During that evening, the officers were eating at a deli when they observed Ratliff enter the deli and shoplift an item. The officers placed Ratliff under arrest, handcuffed his hands behind his back, placed him inside the empty van, and locked the van. The officers then returned to the deli to pay for their meal and obtain information for the shoplifting report.

After 10 to 15 minutes, someone entered the deli and told the officer he could hear movement in the van. The officers returned to the van and observed that the viewing window between the prisoner holding area and the cab was broken, and the radio inside the cab was damaged. The wires from the damaged radio and an officer's jacket had been pulled through the broken window into the prisoner holding area. When the officers opened up the holding area, they discovered Ratliff, with his hands now cuffed in front of him, looking "somewhat wild and unkempt."

On December 24, 1984, Ratliff was charged by information with the crime of malicious mischief in the second degree.[1] At trial, Ratliff testified that he had been drinking heavily and taking drugs in the hours preceding the incident. He stated that the officers left him in the van for

---

[1]RCW 9A.48.080(1)(a) provides:

"A person is guilty of malicious mischief in the second degree if he knowingly and maliciously:

"(a) Causes physical damage to the property of another in an amount exceeding two hundred fifty dollars; . . ."

about an hour, and he began to get nervous. "I was thinking they were definitely going to beat me up . . .", he testified, so he broke the window in order to get to the radio to call someone.

The supervisor of the shop that repaired the damaged radio testified that the repairs required $125.85 in materials and $250 in labor. He further testified that this amount probably was within 10 to 15 percent of the price charged at any competent shop. On cross examination, he admitted that he initially thought that the cost of repair would exceed the cost of replacement, but he repaired the radio because the police needed the vehicle back in operation.

The State also presented testimony from the shop foreman who replaced the window. The foreman testified that the replacement required $69.38 in labor and materials.

Ratliff was convicted of malicious mischief in the second degree. On April 3, 1985, the court imposed a sentence of 180 days, which was outside the standard range of 0–90 days. In findings and conclusions entered to support the exceptional sentence, the court concluded:

1. The current offense, especially when considered in the context of prior convictions, is unusual in that it manifests a deliberate maliciousness towards law enforcement authorities such that it is not a normal malicious mischief in the second degree.

2. The defendant's misdemeanor and gross misdemeanor criminal history, which is not calculated into the normal sentencing range under the Sentencing Reform Act, indicates not only that the defendant is a recidivist but also that he has a pattern of criminal convictions similar to the current offense.

3. The combination of the serious nature of the current offense and the defendant's criminal history indicates that the standard range if followed would not provide punishment commensurate with the seriousness of offense and criminal history of the offender and further would not promote respect to the law. The offense seriousness and the defendant's criminal history constitute aggravating factors which are substantial and compelling reasons for an exceptional sentence above the range and

for the imposition of a fitting and just sentence of 180 days of total confinement.

On appeal, Ratliff raises three issues. He contends (1) the trial court improperly instructed the jury on the meaning of "damages," (2) the trial court erred in instructing the jury on the malice inference, and (3) the trial court's reasons do not justify an exceptional sentence.

We first determine if the trial court improperly instructed the jury that:

> Damages, in addition to its ordinary meaning, includes any breaking, and includes any diminution in the value of any property or the reasonable value of necessary repairs to any property which was damaged as a consequence of an act.

The trial court prepared this instruction, taking part of it from the statute defining "damages" for the purposes of RCW 9A.48[2] and part of it from the pattern instruction for damages in a civil case.[3]

Ratliff argues that the trial court erred in giving this instruction because the Legislature intended that the only standard for measuring damages should be the diminution in the value of the property. The State contends that the cost of repairs is within the "ordinary meaning" of damages, and therefore, the trial court properly included language concerning the cost of repairs in its instruction to the jury.

Ratliff's argument is unpersuasive for two reasons. First, the cost of repair has long been allowed as an element

---

[2]RCW 9A.48.010(1)(b) provides:

"Damages", in addition to its ordinary meaning, includes any charring, scorching, burning, or breaking, or agricultural or industrial sabotage, and shall include any diminution in the value of any property as a consequence of an act."

[3]The general civil damage instruction is WPI 30.01. Various other instructions may be inserted into WPI 30.01 in order to reflect the various elements of damages in a particular case. One of these elements of damages is expressed in WPI 30.13 as "[t]he reasonable value of necessary repairs to any property which was damaged."

of damages under certain circumstances.

> When the claim involves injury or damage to personal property, short of complete destruction, the measure of damages is usually expressed as being limited to the difference in market value of the property before and after the injury *or to the reasonable cost of repairs to restore it to its former condition,* and for loss of use during the period of repair.

(Italics ours.) *King Logging Co. v. Scalzo,* 16 Wn. App. 918, 926, 561 P.2d 206 (1977); Restatement (Second) of Torts § 928, at 543 (1979); C. McCormick, *Damages* § 124, at 470 (1935).

In arguing that the "ordinary meaning" of damages does not include the cost of repairs, Ratliff cites *McCurdy v. Union Pac. R.R.,* 68 Wn.2d 457, 413 P.2d 617 (1966). Although the passage Ratliff quotes from *McCurdy* does not mention the cost of repairs as an element of damages, the *McCurdy* court elsewhere approved of submitting evidence on the cost of repairs to the jury as a factor for it to consider in determining damages. *See McCurdy,* at 469.

■ Furthermore, Ratliff's argument runs contrary to established rules of statutory construction. The Legislature stated that "'[d]amages,' in addition to its ordinary meaning . . . shall include any diminution in the value of any property as a consequence of an act." RCW 9A.48.010-(1)(b). If, as appellant argues, diminution in value is the only meaning of damages, then some part of the statute is surplusage. Because it is an elementary rule of construction that effect must be given, if possible, to every word of a statute, *Hayes v. Yount,* 87 Wn.2d 280, 290, 552 P.2d 1038 (1976); *Western Wash. Cement Masons Funds v. Hillis Homes, Inc.,* 26 Wn. App. 224, 232, 612 P.2d 436 (1980); 2A N. Singer, *Statutory Construction* § 46.06, at 104 (4th ed. 1984), we conclude that the Legislature did not intend to limit the meaning of damages to the diminution in value.

We next consider whether the trial court erred in instructing the jury that it could infer malice "from an act

done in willful disregard of the rights of another."[4] Relying on *Bellevue v. Kinsman,* 34 Wn. App. 786, 664 P.2d 1253 (1983), *State v. Simmons,* 28 Wn. App. 243, 622 P.2d 866 (1980), and *State v. Johnson,* 23 Wn. App. 605, 596 P.2d 1047 (1979), Ratliff contends that the trial court erred in giving the instruction because the presumed fact (malice) does not flow beyond a reasonable doubt from the proven fact (an act done in willful disregard of the rights of another).

When presumptions are at issue, the threshold inquiry in ascertaining the applicable constitutional analysis is a determination of the nature of the presumption in question. *Sandstrom v. Montana,* 442 U.S. 510, 514, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). The court must decide whether the challenged portion of the instruction creates a mandatory presumption or merely a permissive inference. A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion. *Francis v. Franklin,* 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965, 1971 (1985).

 It is clear, and both parties assume, that the instruction given in the present case creates only a permissive inference.[5] A permissive inference is valid when there is a "rational connection" between the proven fact and the

---

[4]The trial court instructed the jury that: "[m]alice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be inferred from an act done in willful disregard of the rights of another."

[5]The words "may be inferred" suggest a permissive inference. *State v. Johnson,* 100 Wn.2d 607, 618, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985). Furthermore, the instruction in this case does not go on to qualify this permissive language with the kind of stricter language that may create a mandatory presumption. *See, e.g., Johnson,* 100 Wn.2d at 618–19 (court found that language "unless such entering or remaining shall be explained by evidence satisfactory to you" may have been interpreted as a mandatory presumption).

inferred fact, and the inferred fact flows "more likely than not" from the proven fact. *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 167, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979); *Leary v. United States,* 395 U.S. 6, 36, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); *State v. Johnson,* 100 Wn.2d 607, 616, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985).[6] Under the facts of this case, there was a rational connection between the proven fact and the inference of malice. Ratliff admitted on cross examination that he continued to pull radio wires loose after he did not succeed in bringing the radio toward him. He stated that he continued to pull at the wires because he "was frustrated." Furthermore, the officers testified that one of their jackets had been pulled through the window into the prisoner holding area, a situation more consistent with malicious intent than with Ratliff's claim that he wanted to use the radio to call help. Given these facts, the inference of malice flows more likely than not from the conduct of the defendant.

Finally, we determine whether the trial court erred in imposing an exceptional sentence. The trial court sentenced Ratliff outside of the standard range based on (1) his past misdemeanor convictions, and (2) the fact that his present offense involved conduct directed at the property of law enforcement authorities.

To reverse a sentence which is outside the standard

---

[6]Both parties rely on the test stated in *State v. Johnson,* 23 Wn. App. 605, 607, 596 P.2d 1047 (1979), that the inferred fact must follow from the proven fact beyond a reasonable doubt. After *Johnson* was decided, however, the United States Supreme Court clarified that the correct approach in cases involving permissive inferences was the "more likely than not" standard. *Ulster Cy.,* at 167.

Subsequent Washington cases continued to apply the "beyond a reasonable doubt" standard, relying on *Johnson* and earlier state and federal decisions. *Bellevue v. Kinsman, supra; State v. Simmons, supra.* These decisions do not mention *Ulster Cy.;* they merely apply the stricter standard. There is no indication in the opinions that the stricter standard is based on independent state grounds; the decisions rely only on federal cases or on state cases which in turn rely on federal cases.

Our Supreme Court has since recognized that *Ulster Cy.* expresses the proper test for permissive inferences. *Johnson,* 100 Wn.2d at 616.

range, the reviewing court must find: (a) the reasons supplied by the sentencing judge are not supported by the record or those reasons do not justify a sentence outside the standard range for that offense; or (b) the sentence imposed was clearly excessive or clearly too lenient. RCW 9.94A-.210(4). In the present case, the only issue is whether the reasons justify the exceptional sentence.

In order to justify an exceptional sentence, the trial court must articulate a reason which is "substantial and compelling", RCW 9.94A.120(2), and which has not already been considered in computing the presumptive range for the offense. *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

We hold that defendant's history of misdemeanor convictions is a "substantial and compelling" reason justifying a departure from the standard sentence range. The sentencing reform act clearly contemplates that the aggravating factors listed in the statute are not exclusive and that the courts will develop a "common law of sentencing" to fill the interstices in the legislative declaration of policy. *See* RCW 9.94A.210(6), .390; D. Boerner, *Sentencing in Washington* § 9–2 (1985). In particular, the consideration of defendant's misdemeanor history is clearly envisioned by the act. The official comments of the Sentencing Guidelines Commission indicate that "[t]he Commission anticipates that in some instances an offender's history of misdemeanors may be used by the court in selecting a sentence within the standard sentence range or in departing from the range to administer an exceptional sentence." Comment to RCW 9.94A.360, in D. Boerner, *Sentencing in Washington,* app. 1, at I–24 (1985). Finally, it is clear that Ratliff's history of 34 misdemeanor convictions (including several convictions for property destruction) is the type of record that justifies treating him differently.[7]

---

[7]Ratliff cites *State v. Nelson*, 43 Wn. App. 871, 719 P.2d 961 (1986) to support his argument that the court may not rely on a defendant's misdemeanor record in order to sentence outside the standard range. In *Nelson*, however, the

Furthermore, Ratliff's prior misdemeanors were not already taken into account in figuring his offender score. RCW 9.94A.360. *Cf. State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821 (defendant's criminal history was already computed in defendant's offender score and thus is not a justification for exceeding the standard range), *review denied,* 104 Wn.2d 1028 (1985).

We need not determine whether the trial court was also correct in relying on the nature of Ratliff's offense in order to exceed the standard range. Regardless of whether this second reason was valid, we affirm the exceptional sentence because the first reason is sufficient alone to justify a sentence outside the standard range. *See State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1111 (1986); *State v. Wood,* 42 Wn. App. 78, 83, 709 P.2d 1209 (1985).

Affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.

Review denied by Supreme Court March 31, 1987.

court found only that the *lack* of a misdemeanor record was not a mitigating circumstance because "[t]he absence of criminal history, while commendable, should be the norm in our society." *Nelson,* at 879. This reasoning does not support defendant's contention that the court may not consider his extensive record of misdemeanors in sentencing in excess of the standard range.