IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78934-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL WAYNE ZICK, | ) | |
| | ) | FILED: February 3, 2020 |
| Appellant. | ) | |

VERELLEN, J. — Michael Zick appeals his conviction for first degree malicious mischief. Zick broke 44 windows at a post office during business hours, while people were inside. He told police that breaking the windows was his form of protest against the federal government. The State presented sufficient evidence of Zick's malice through testimony that he knowingly damaged property with the intent to vex, annoy, or injure the people inside the post office.

In jury instruction 10, the court instructed the jury: "Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another."[1] The court did not abuse its discretion by allowing the jury to make this permissible inference because the inferred fact, Zick's malicious intent, flows

---

[1] Clerk's Papers at 19.

"more likely than not" from the proven fact that Zick broke the windows at the post office during business hours, while people were inside.

At sentencing, for the first time, Zick mentioned hearing voices. The court did not abuse its discretion by not sua sponte ordering a mental health evaluation to address Zick's competency because there was no evidence that Zick lacked the capacity to understand the nature of the proceedings or to assist in his defense.

The court also imposed a $500 victim penalty assessment. Because Zick's sole source of income is federal disability benefits, the sentence must be amended to prohibit the collection of the assessment from those benefits.

Therefore, we affirm but remand for the trial court to revise the sentence to indicate that the crime victim assessment may not be satisfied out of Zick's disability income.

## FACTS

On April 28, 2018, Zick broke 44 windows at a post office in Bellingham. The State charged Zick with first degree malicious mischief. The jury convicted Zick as charged. The court sentenced Zick to 36 months' incarceration and imposed a $500 victim penalty assessment.

Zick appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

Zick contends there was insufficient evidence of malice to sustain his conviction for malicious mischief.

We review sufficiency of the evidence de novo.[2] "Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt."[3] To determine whether there is sufficient evidence to sustain a conviction, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[5]

"A person is guilty of malicious mischief in the first degree if he or she knowingly and maliciously . . . [c]auses physical damage to the property of another."[6] RCW 9A.04.110(12) defines "malice and maliciously" as "an evil intent, wish, or design to vex, annoy, or injure <u>another person</u>. Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty."

---

[2] <u>State v. Rich</u>, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

[3] <u>State v. Johnson</u>, 188 Wn.2d 742, 750, 399 P.3d 507 (2017) (citing U.S. CONST. AMEND. XIV; WASH. CONST. art. I, § 3; <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); <u>Rich</u>, 184 Wn.2d at 903).

[4] <u>State v. Elmi</u>, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[5] <u>State v. Salinas</u>, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[6] RCW 9A.48.070(1)(a).

Here, Zick told police breaking the windows at the post office "was his form of protest against the U.S. government that he felt let him down when he was 12 years old."[7] Zick told police he chose the post office because "it represents the government" and "[h]e pointed to the U.S. flag."[8] He also told the police that he was "fully" aware that what he was doing was wrong.[9]

Zick argues the State failed to show he acted with malice toward another person because the federal government does not constitute a person. RCW 9A.04.110(8) defines "government" as "any branch, subdivision, or agency of the government of this state and any county, city, district, or other local government unit." And RCW 9A.04.110(17) defines "person" as "any natural person and, where relevant, a corporation, joint stock association, or an unincorporated association."

However, our Supreme Court has acknowledged, in dicta, "that statutes defining 'malicious mischief' do not require damage to the property of an intended victim."[10] It is sufficient for the State to prove the defendant damaged the property of another with the intent to vex, annoy, or injure someone.[11]

---

[7] Report of Proceedings (RP) (Aug. 28, 2018) at 131.

[8] Id.

[9] Id. at 132.

[10] State v. Wooten, 178 Wn.2d 890, 897 n.6, 312 P.3d 41 (2013) (emphasis omitted).

[11] Id. (citing RCW 9A.48.070; RCW 9A.04.110(12)).

4

Here, the State proved Zick damaged property by breaking the windows at the post office during business hours, while people were inside. Zick broke windows for a few minutes.[12] After the third or fourth window, "most of the people in the lobby were panicking."[13] Some people ran outside. He continued to break the windows, even after some people panicked and fled. This is sufficient evidence that Zick intended to vex, annoy, or injure the people inside the post office.

Without deciding whether the government may constitute a "person" under RCW 9A.48.070(1)(a), the evidence established Zick knowingly damaged property with the intent to vex, annoy, or injure the people inside the post office. The State presented sufficient evidence to sustain Zick's conviction for first degree malicious mischief.

II. Jury Instruction 10

Zick argues the court improperly instructed the jury that it could infer malice from wrongful conduct.

Generally, we review instructional errors de novo.[14] However, "[i]f a jury instruction correctly states the law, the trial court's decision to give the instruction will not be disturbed absent an abuse of discretion."[15] "Jury instructions satisfy the

---

[12] See RP (Aug. 28, 2018) at 116 ("I figured it would be helpful to take a video of it . . . [s]o I taped for probably five minutes.")

[13] Id. at at 104.

[14] State v. Stacy, 181 Wn. App. 553, 568, 326 P.3d 136 (2014).

[15] Id. at 569.

fair trial requirement when, taken as a whole, they properly inform the jury of the law, are not misleading, and permit the parties to argue their theories of the case."[16]

Here, in jury instruction 10, the court instructed the jury: "Malice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another."[17] This language is contained in the statutory definition of "malice" and "maliciously."[18] Zick does not argue jury instruction 10 misstates the law. And the parties agree the second sentence of jury instruction 10 sets out a permissive inference.[19] "A permissive inference is valid when there is a 'rational connection' between the proven fact and the inferred fact, and the inferred fact flows 'more likely than not' from the proven fact."[20] Zick argues the second sentence of jury instruction 10 should have been excluded because there was no rational connection between him breaking the windows and a malicious intent.

---

[16] State v. Morgan, 123 Wn. App. 810, 814-15, 99 P.3d 411 (2004).

[17] Clerk's Papers at 19.

[18] RCW 9A.04.110(12).

[19] See Appellant's Br. at 14; Resp't's Br. at 21; see also State v. Ratliff, 46 Wn. App. 325, 330, 730 P.2d 716 (1986) ("A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.").

[20] Ratliff, 46 Wn. App. at 330-31.

As stated above, the evidence shows that Zick broke 44 windows at the post office during business hours, while people were inside. Zick broke windows for a few minutes. He continued to break the windows, even after some people panicked and fled.

The inferred fact, Zick's malicious intent, flows "more likely than not" from the proven fact that Zick broke the windows at the post office during business hours, while people were inside. The court did not abuse its discretion when it instructed the jury that it could infer malice from wrongful conduct.

III. Competency

Zick contends the court abused its discretion because it did not sua sponte order a competency evaluation. We review whether a trial court should have sua sponte ordered a competency evaluation for abuse of discretion.[21]

The due process clause of the Fourteenth Amendment guarantees an accused person the fundamental right not to stand trial, including sentencing, unless legally competent.[22] A defendant is incompetent if they "lack[ ] the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect."[23]

---

[21] State v. McCarthy, 193 Wn.2d 792, 803, 446 P.3d 167 (2019).

[22] State v. Ortiz-Abrego, 187 Wn.2d 394, 403, 387 P.3d 638 (2017); see also RCW 10.77.050 ("No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues.").

[23] RCW 10.77.010(15).

Under RCW 10.77.060, "[w]henever there is reason to doubt a defendant's competency to stand trial, the court must order an expert to evaluate the defendant's mental condition."[24] If the issue of competency is "fairly debatable," failure to order an evaluation does not violate RCW 10.77.060 and does not constitute an abuse of the court's discretion.[25]

Here, at sentencing, the court provided Zick an opportunity to make a statement about his case. For the first time, Zick mentioned hearing voices.

> For the last eight years I've just been subjected to some kind of people blasting their voices in my head. I can't understand what they are saying. I can't hear what they are saying. All day, every day, 24-7, without respite, without losing, and it's driven me absolutely bonkers. I mean, it's just a throbbing in my head with the voices just not letting me know what's going on, what they are saying and saying my name and other people's names in my life and it's really been hard.[26]

In response, the court asked whether it should order a mental health examination.

> I'm sympathetic to Mr. Zick's description of the voices that he hears and how hard it is for him to function in that way with those voices. I know that there was not an issue of competency or sanity in this trial, but given his comments about the voices I'm wondering if a mental health examination by the Department of Corrections and appropriate treatment, if any, would be helpful to Mr. Zick.

---

[24] State v. Coley, 180 Wn.2d 543, 552, 326 P.3d 702 (2014) (citing RCW 10.77.060).

[25] McCarthy, 193 Wn.2d at 803 (quoting State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012)).

[26] RP (Sept. 5, 2018) at 185-86.

I'm not going to order that if there is an objection, but if the parties believe that would be helpful and Mr. Zick agrees, I'll make that part of the sentence.[27]

Zick's defense counsel indicated, "Mr. Zick would like it not to be ordered, please."[28]

Given this evidence, there was no reason for the court to doubt Zick's competency. Although he complained of hearing voices, there is no evidence that Zick lacked the capacity to understand the nature of the proceedings or to assist in his own defense.

The court did not abuse its discretion when it failed to order a mental health evaluation.

IV. Legal Financial Obligations

In the judgment and sentence, the trial court imposed a $500 victim penalty assessment. Zick's sole source of income is federal disability. Zick argues, and the State concedes, because Zick's sole source of income is federal disability benefits, the judgment and sentence must be amended to prohibit the collection of legal financial obligations from those benefits.[29]

---

[27] Id. at 200.

[28] Id.

[29] State v. Catling, 193 Wn.2d 252, 266, 438 P.3d 1174 (2019) ("[W]e affirm the imposition of the $500 crime victim fund assessment but remand to the trial court to revise the judgment and sentence . . . to indicate that this [legal financial obligation] may not be satisfied out of any funds subject to the Social Security Act's antiattachment statute."); see 42 U.S.C.A. §§ 401 and 407 (federal disability payments are subject to the antiattachment statute).

Therefore, we affirm but remand for the trial court to revise the sentence to indicate that the crime victim assessment may not be satisfied out of Zick's disability income.

WE CONCUR: