## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58906-1-II |
| Respondent, | |
| v. | |
| NICHOLAS K. GARRISON, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Nicholas K. Garrison appeals his conviction for first degree arson.  He argues that the trial court erred by allowing an improper opinion of guilt, by giving a jury instruction about the permissive inference regarding malice when it was not supported by the evidence, and by entering a conviction for arson where there was insufficient evidence.  Garrison also argues that the State committed prosecutorial misconduct in closing arguments and that the cumulative effect of all the errors denied him the right to a fair trial.  We affirm.

### FACTS

On the afternoon of February 22, 2023, police responded to reports of a fire at the Mount Angeles Villa apartment complex (known as "the Villa").  Arriving on the scene, officers learned that the fire had broken out in apartment 103.  As they approached, they could smell smoke and burning plastic emanating from the apartment.  Once inside, they found scorch marks on the kitchen counter and a pile of burned objects.  It also appeared that the apartment's smoke detector had been ripped from the ceiling and smashed.  The officers eventually found the resident of the apartment, Garrison, laying down under his bed with his feet sticking out.  At that point, the

officers determined they had probable cause to arrest Garrison for arson and removed him from the premises.

Following further investigation, Garrison was charged with first degree arson. The case proceeded to a jury trial.

I. TRIAL TESTIMONY

A. RESPONDING OFFICERS' TESTIMONY

Officers Swanson and McKnight were the responding officers who conducted the initial investigation, and both testified at trial consistent with the facts above.

Swanson further testified that as soon as he entered the building's lobby, "[he] could smell the smoke of like plastic burning" and felt the smell burn his eyes. Verbatim Rep. of Proc. (VRP) at 271. The smell progressively grew more intense as he approached apartment 103. When he entered the apartment, Swanson noticed a pile of debris on the ground by the counter that appeared to be the source of the smoke. The pile was comprised of burnt objects that Swanson was able to identify as "a book, some kind of towel or jacket or clothing item and then there was also a bunch of multiple-colored objects like mashed in." VRP at 274.

McKnight testified that it appeared that the kitchen counters had been burned or scorched. And both officers testified that they also found a smoke detector that had been broken into pieces and ripped out of the ceiling.

The officers testified that while searching the apartment's bedroom, they found Garrison lying unresponsive under the bed. Once Garrison became responsive, the officers placed Garrison under arrest for arson.

## B.  DETECTIVE CAMERON'S TESTIMONY

Detective Cameron, who has special training in arson investigations, was called to the Villa that day to help investigate the cause of the fire.

Cameron testified that he observed a "torch style" lighter along with "deep charring" on the kitchen counter.  VRP at 309, 316.  Nearby, he found a pile of burned debris that he noted looked wet.  Cameron picked up a jacket that was in the pile and underneath it he found "a couple pieces of plastic" and what appeared to be a hairbrush, multiple credit cards, paper or a small book, a deodorant stick, a comb, and other objects.  He also found some objects that appeared to be melted into the jacket.  The credit cards were so melted that they were stuck together, but he was able to read that they belonged to Nicolas Garrison.  Although the pile of objects appeared burned, there was no apparent fire damage to the appliances or electrical outlet on the counter or any damage to the floor underneath.

In the living room, Cameron testified that he found a smoke detector that had its batteries and cap missing.  Under a pile of clothes, Cameron also found another working lighter and he found a book of matches on the couch.

## C.  NEIGHBORS' TESTIMONY

Several of Garrison's neighbors in the Villa testified about their observations on the day of the fire.  One neighbor, Trowbridge, testified that as she was evacuating her apartment, she saw another resident banging on the door of apartment 103 and asking if the person inside was okay.  Recognizing Garrison's voice, Trowbridge testified that she "could hear [Garrison] yelling through the door that he had put the fire out."  VRP at 222.

Another neighbor, Firestone, testified that she lived immediately next door to Garrison. After she had already evacuated the building, she went back to check on Garrison's apartment because she was concerned that there was a person still inside. Through an open window, Firestone testified that she saw Garrison "on the couch yelling to turn off the fire alarm or he was gonna kick it." VRP at 256. Firestone told him that he needed to get out of the building, to which Garrison responded, "[T]his is what I think of your fire." VRP at 256. Firestone testified that then "he rolled up the blinds again and then he gave me that evil stare." VRP at 256. Firestone then repeated that after she told Garrison that he needed to evacuate, "he gave that evil look." VRP at 257.

Defense counsel objected to Firestone's use of the adjective "evil." The trial court overruled the objection, reasoning, "I think she can describe what she saw, so I'll overrule." VRP at 257.

The State then asked Firestone to elaborate on what she meant when she said Garrison gave her an "evil look":

> [State:] . . . [J]ust for clarification, when you say he was giving you that kind of look, like what was he doing specifically?
>
> [Firestone:] He was just standing there just like that. Just like that.
>
> [State:] Okay, so, all right, maybe I'll keep my hands down.
>
> [Firestone:] It was just like that, perfect.
>
> [State:] Okay. So, . . . I had my hands on my hips, right, and looking right at you and that is what reminded you of what you saw on February 22nd of this year?
>
> [Firestone:] No, it reminded me that's the look.

VRP at 258.

4

During the remainder of her testimony, Firestone used the term "evil look" to describe Garrison looking at her several more times.

II. JURY INSTRUCTIONS

After the defense and the State finished presenting their evidence, the trial court conferred with the parties about the State's proposed jury instructions. The defense did not object to any of the proposed jury instructions.

The trial court's "to convict" instruction told the jury that to convict Garrison of first degree arson they would have to find that the State had proved beyond a reasonable doubt:

(1) That on or about February 22, 2023, [Garrison] caused a fire or explosion;

(2) That the fire or explosion was in a building in which there was at the time a human being who was not a participant in the crime;

(3) That [Garrison] acted knowingly and maliciously; and

(4) That this act occurred in the State of Washington

Clerk's Papers (CP) at 35. The court's instruction 8 defined the terms "malice and maliciously" and also included a permissive inference for the concept of malice. CP at 37. Instruction 8 provided:

Malice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person.

Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another.

CP at 37.

No. 58906-1-II

III. THE STATE'S CLOSING ARGUMENT

During its closing argument, the State walked the jurors through its proof of each element of arson. The State ended its closing by arguing that Garrison possessed the requisite malicious intent to be guilty of arson; it stated:

> [Garrison] set it knowing that that would cause a possible evacuation and anyone with any sense at all would know that it is dangerous to set a fire in an occupied apartment building. Anyone would know that. Anyone would know that and yet to spite that, to spite all of that, he didn't light a candle, right? . . . . This was a pile of debris that he set on fire at two, two thirty, somewhere thereabouts, in the afternoon, in a fully occupied apartment building. That is maliciously set, and so, ladies and gentlemen, I ask that you look at all the evidence, *the circumstances that led investigators to the conclusion that this was an intentional fire* and I ask that you find Mr. Garrison guilty of arson [in] the first degree.

VRP at 348 (emphasis added). Defense counsel did not object to the statements.

After deliberations, the jury found Garrison guilty of first degree arson. Garrison appeals.

ANALYSIS

Garrison argues five errors on appeal. He argues (1) that the trial court abused its discretion when it allowed his neighbor to give an improper opinion of guilt, (2) that his due process rights were violated because a permissive inference of malice had no rational connection to the evidence, (3) that because the State failed to prove the element of malice, there was insufficient evidence to support his conviction, (4) that the State committed prosecutorial misconduct by making arguments unsupported by the record, and (5) that the cumulative effect of these errors deprived him of the right to a fair trial. We disagree.

6

I. OPINION TESTIMONY

Garrison argues that the trial court erred by allowing his neighbor, Firestone, to testify that he gave her an "evil stare" and an "evil look." Appellant's Opening Br. at 27. He argues this testimony was an improper opinion of guilt. We disagree.

A trial court's evidentiary rulings are reviewed for an abuse of discretion. *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). While a trial court is given considerable discretion to determine the admissibility of evidence, it is an abuse of discretion for a trial court to make an evidentiary ruling that is contrary to law. *Id.*

A lay witness may give opinion testimony that is rationally based on their perceptions to help the jury understand their testimony so long as it is "not based on scientific, technical, or other specialized knowledge." ER 701. Permissible opinion testimony includes "personal observations of the defendant's conduct, factually recounted by the witness, that directly and logically support the conclusion." *See State v. Day*, 51 Wn. App. 544, 552, 754 P.2d 1021 (1988), *review denied*, 111 Wn.2d 1016. However, in giving their opinion, witnesses cannot tell the jury their "personal belief[] as to the guilt of the defendant, the intent of the accused, or the veracity of witnesses." *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008).

Garrison contends that Firestone's testimony about an "evil" look or stare was an improper opinion on guilt because it "amounted to saying he looked like he was filled with malice." Appellant's Opening Br. at 29. Garrison notes the use of the "evil" in the definition of malice and suggests that the overlapping language of the testimony permitted the jury to recognize the "matching language" and to improperly rely on it "to answer the difficult question of Mr. Garrison's mental state." Appellant's Reply Br. at 13.

We are unpersuaded. Firestone's testimony did not speak to an element of the crime. Her testimony was about her personal observation of Garrison *after* the alleged crime had been committed. At the time of their interaction, the fire had already been started. Firestone was describing how she perceived Garrison's look in that later moment, she was not testifying about his "intent" when he started a fire in his apartment, nor did she more generally give an opinion on Garrison's guilt.

Garrison supports his argument with a number of cases, but each can be distinguished—each case involved witnesses commenting more directly on whether the defendant was guilty or had the requisite intent to commit the alleged crime. *See e.g., Quaale*, 182 Wn.2d. at 202 (holding that it was an improper for a police officer to testify that he thought that the defendant "was impaired" while driving); *Montgomery*, 163 Wn.2d at 594 (holding that it was an improper for a forensic chemist to opine that a person purchasing certain drugs had intent to make methamphetamine); *State v. Haga*, 8 Wn. App. 481, 492, 507 P.2d 159 (1973) (holding that it was improper for an ambulance driver to comment that based on his experience, the defendant's behavior after his wife had died was unusual), *review denied*, 86 Wn.2d 1007 (1975)). Firestone's description of Garrison's physical appearance bears no similarity to these more direct statements of guilt.

Garrison further focuses, however, on the overlap between Firestone's choice of words and the definition of the term malice. It is true that Firestone's word "evil" also happens to be part of the definition of malice. This overlap does provide some support for Garrison's concerns, but as discussed above, the context of Firestone's testimony places it squarely outside of the rules that pertain to opinion testimony. Firestone was describing her actual physical observation of Garrison

during their interaction and there is nothing to suggest that she was using the term "evil" in an attempt to match the statutory definition of malice. Because Garrison has not shown the testimony was an impermissible opinion of guilt, his argument that the trial court abused its discretion fails.[1]

II. PERMISSIVE INFERENCE

Garrison next argues that the inclusion of a permissive inference of malice in jury instruction 8 violated his due process rights. We disagree.

We review a due process challenge to jury instructions de novo. *State v. Sandoval*, 123 Wn. App. 1, 4, 94 P.3d 323 (2004). To comply with due process, the State must prove every essential element of a crime beyond a reasonable doubt. *State v. Cantu*, 156 Wn.2d 819, 825, 132 P.3d 725 (2006). To meet its burden of proof, the State may use direct or circumstantial evidence as well as evidentiary devices like inferences and presumptions. *Id.* at 826.

A person is guilty of first degree arson if that person knowingly and maliciously "[c]auses a fire or explosion in any building in which there shall be at the time a human being who is not a participant in the crime." RCW 9A.48.020(1)(c). To prove that the person acted "maliciously," that person must have acted with "evil intent, wish, or design to vex, annoy, or injure another person." RCW 9A.04.110(12). The law permits, in some cases, for "maliciously" to be proven through the use of a permissive inference. *See State v. Ratliff*, 46 Wn. App. 325, 331, 730 P.2d 716 (1986), *review denied*, 108 Wn.2d 1002 (1887); *see also* RCW 9A.04.110(12) (providing that "[m]alice may be inferred from an act done in willful disregard of the rights of another . . . ").

---

[1] A better fit for Garrison's complaints about this testimony might have been the potential application of ER 403, but we limit our consideration to the arguments raised by the parties. *See Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 50, 534 P.3d 339 (2023) (explaining that Washington courts generally follow the rule of party presentation).

"A permissive inference or presumption permits, but does not require, the jury to infer an element of the offense, an 'elemental' or 'presumed' fact, from an 'evidentiary' or 'proved' fact." *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994). Permissive inferences do not generally diminish the State's burden because "the State must still convince the jury the suggested conclusion should be inferred from the basic facts proved." *Id.* However, for a permissive inference to be valid there must be a " 'rational connection' between the proven fact and the inferred fact, and the inferred fact flows 'more likely than not' from the proven fact." *Ratliff*, 46 Wn. App. at 330-31.

Garrison takes issue with inclusion of the permissive inference in jury instruction 8, which provided that "[m]alice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another." CP at 37. Garrison claims that "there is not an iota of evidence indicating he had an 'evil intent' to 'vex, annoy, or injure.' " Appellant's Reply Br. at 6. He argues that the State's evidence, specifically that "there were a couple of lighters and some burned objects" and a broken smoke detector, and that police found Garrison lying under his bed, was not enough to logically conclude that Garrison maliciously started a fire. Appellant's Opening Br. at 16. He argues that the fact that the pile of burned objects appeared wet and that they were covered with a jacket could be evidence that he had attempted to put out a fire, not start one. This, he points out is also supported by his neighbor, Trowbridge's testimony that she heard him say that he put the fire out. Additionally, Garrison argues that the State assumed that he removed the smoke detector before the fire, when in reality "the wires hanging out is more consistent with someone frantically pulling them down because the alarm would not stop . . . ." Appellant's Opening Br. at

17-18. He also argues the fact that police found him lying under the bed does not show malice, but embarrassment.

And, according to Garrison, even if there were *some* evidence that could support a conclusion that he acted maliciously, the State failed to prove that that evidence more likely than not supported a conclusion that Garrison acted maliciously. Further, he contends that his conduct can be better characterized as negligence, and therefore, it is not "more likely than not" that he acted with malice. Appellant's Reply Br. at 9.

We disagree that the evidence does not support the use of the inference. When officers entered Garrison's apartment they observed that in Garrison's apartment there were lighters, disassembled fire detectors, and scorch marks on the kitchen countertops. Underneath a jacket, officers also found a pile of burned pieces of plastic items including numerous personal items, some of which appeared to be melted onto the jacket. The officers also noted that only the counter and these items appeared to have fire damage to them—there was no observable charring or damage done to the electrical outlets, any appliances, or the floor. In addition, both neighbors Trowbridge and Firestone testified that Garrison was hostile to those in the apartment building who were trying to help Garrison—with Firestone testifying that Garrison yelled at her, "[T]his is what I think of your fire." VRP at 256.

Based on this testimony, there was a rational connection between the proven facts and an inference of malice. As the State points out, it is more likely than not that a person would only have a pile of burned objects including credit cards, a book, and a jacket because they intentionally decided to burn them rather than it being an accident. So, too, the ripping of the smoke detector from the wall suggests an intentional fire (and perhaps the intent to hide it). These details, plus

11

Garrison's hostility to his neighbors, nonresponsiveness to law enforcement, and the fact that he lived in an apartment building shared with so many other people mean an inference of malice more likely than not flows from the evidence. Garrison's recitation of the facts shows it is possible to build an inference that he acted with carelessness or negligence. But while this inference is possible, it does not negate a separate inference of malice. Thus, the trial court did not err by giving instruction 8 with a permissive inference for malice.

III. SUFFICIENCY OF THE EVIDENCE

Garrison next argues that there is insufficient evidence for his conviction. We disagree.

Evidence is sufficient to support a guilty verdict if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find that all of the elements of the crime charged were proven beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, they admit the truth of the State's evidence, and we draw all reasonable inferences in favor of the State. *Id.* at 265-66. And we defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

Somewhat related to his arguments about the permissive inference, Garrison claims that there is insufficient evidence to convict him of arson because the State did not establish the element of malice. As shown above, Garrison constructs inferences from the evidence that support his claims of innocence. But that is not the correct exercise for a sufficiency of the evidence claim.

When the evidence is viewed in a light most favorable to the State with all reasonable inferences drawn in its favor, there is sufficient evidence of arson. As shown in our discussion of

the permissive inference, the facts, construed appropriately in the State's favor, adequately support the jury's conclusion that Garrison intentionally and maliciously started this fire. Thus, Garrison's argument that there was insufficient evidence to support his arson conviction fails.

IV. PROSECUTORIAL MISCONDUCT

Garrison argues that the State committed prosecutorial misconduct during closing argument when it misrepresented the facts and that the misconduct could not have been cured by an instruction. We disagree that the improper statement could not have been cured.

To prevail on a claim of prosecutorial misconduct, a defendant must first demonstrate that the prosecutor's statements were improper and, second, that they were prejudicial. *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). Prejudice occurs when " 'within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.' " *State v. Weber*, 159 Wn.2d 252, 270, 149 P.3d 646 (2006) (internal quotation marks omitted) (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

However, when a defendant fails to object to a prosecutor's statements, a waiver is presumed unless the defendant can show that the statements were so flagrant and ill-intentioned that no instruction could have cured them. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). Our analysis focuses more on whether the prejudice could have been cured and less on whether the prosecutor's misconduct was flagrant and ill-intentioned. *State v. Gouley*, 19 Wn. App. 2d 185, 201, 494 P.3d 458 (2021), *review denied*, 198 Wn.2d 1041 (2022). "When a nonobjecting defendant fails to show that the improper remarks were incurable, the claim 'necessarily fails, and our analysis need go no further.' " *Id.* (quoting *State v. Emery*, 174 Wn.2d

741, 764, 278 P. 3d 653 (2012)). Whether prejudice is incurable is examined in light of the fact that the jury is presumed to follow the trial court's instructions. *Id.* at 203.

During closing argument, the State said, "I ask that you look at all the evidence, the circumstances *that led investigators to the conclusion that this was an intentional fire* and I ask that you find Mr. Garrison guilty of arson [in] the first degree." VRP at 348 (emphasis added). Garrison argues that this prejudicial statement misstated the facts because there was no testimony that an investigator concluded the fire was set intentionally. Garrison acknowledges that the statement was not objected to at trial, but he argues that the misconduct could not have been cured with an instruction from the trial court because a curative instruction "would do little to rectify the prejudice as jurors are inclined to trust prosecutors." Appellant's Opening Br. at 36.

In response, the State appears to concede the prosecutor's statement was contrary to the evidence, but it contends that any prejudice could have been cured by an instruction. Further the State argues that "[a]ny prejudice from the prosecutor's remark was [] minimal at best," especially given the fact that "the trial court instructed the jury that counsels' arguments are not evidence and that the jury must disregard any remark, statement or argument that is not supported by evidence." Br. of Resp't at 22-23.[2]

---

[2] In addition to other instructions, jury instruction 1, among other things said:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important however, for you to remember that the lawyers' statements are not evidence. . . . You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

CP at 29.

No. 58906-1-II

We agree with the State. Even though the remark was improper, Garrison cannot establish that it was incurable. Had an objection been made, the trial court would have been able to quickly have the parties clarify the record for the jury (or, at a minimum, remind the jury that statements of the lawyers are not evidence). As such, his prosecutorial misconduct claim fails.

V. CUMULATIVE ERROR

Garrison argues that the cumulative error doctrine warrants reversal of his conviction. We disagree.

The cumulative error doctrine provides that a defendant may be entitled to a new trial when cumulative errors result in a fundamentally unfair trial. *Emery*, 174 Wn.2d at 766. Under the cumulative error doctrine, the defendant must show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). The cumulative error doctrine may warrant reversal, even if each error standing alone would otherwise be considered harmless. *Weber*, 159 Wn.2d at 279. This doctrine does not apply when "the errors are few and have little or no effect on the outcome of the trial." *Id.*

Here, Garrison has not established that any error, or combination of errors, denied him a fair trial. Therefore, we hold that the cumulative error doctrine is inapplicable.

CONCLUSION

We affirm Garrison's conviction of first degree arson.

15

No. 58906-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, A.C.J.

MAXA, J.